MARK H. GARTRELL, APPELLEE, v. JULIA A. STAFFORD, APPELLANT.

1. Specific Performance. An action for the specific performance of a contract for the sale of real estate is of two fold character, viz: *in rem* and *in personam*, and may be brought against a non-resident defendant in the county where the land in controversy is situated.

35

2. ———: JURISDICTION. The jurisdiction of courts of equity, to decree specific performance of contracts for the. sale of real estate, is not limited as in cases respecting chattels, to special circumstances, but is general.

3. Vendor and Vendee: TITLE. Where the vendee is willing to accept the vendor's title, the vendor cannot set up as a defense to the action a defect in his title.

4. ———: STATUTE OF FRAUDS. The statute of frauds only requires the vendor to sign the contract, or memorandum thereof, · for the sale of lands.

5. Proving contract by letters. Where a contract is sought to be proved by letters, there must be testimony tending to prove the handwriting, or that they came from the defendant or an authorized agent, or were received in due course of mail in answer to letters mailed to the address of the alleged writer.

ERROR to the district court for Gage county. Tried below before WEAVER, J.

*Colby & Hazlett*, for appellant, on question of jurisdiction cited *Pawling v. Bird*, 13 Johns., 192. *Leith v.·Leith*, 39 N. H., 20. Brown on Frauds, sec. 452. *Armstrong v. Katterhorn*, 11 Ohio, 272. On question of title, cited *Watts v. Waddle*, 1 McLean, 200. *Bates v. Delavan*, 5 Paige, 299. *Fitzpatrick v. Featherstone*, 3 Ala., 40.· On question of admissibility of letters, etc., cited Greenleaf on Evidence, chap. 6. *Coleson v. Thompson*, 2 Wheat., 336. On question of power of court to decree specific performance, cited *Seymour v. Delancy*, 3 Cow., 445. *Modisett v. Johnson*, 2 Blackf., 431. *Carr v. Duval*, 14 Peters, 79. *Walters v. Brown*, 7 J. J. Marsh., 123. *Goodwin v. Lyon*, 4 Porter, 297.

*Pemberton & Forbes*, for appellee, cited *inter alia*, *Bush v. Miller*, 13 Barb., 487. *Cunningham v. Bank*, 21 Wend., 557. 1 Greenleaf Ev., sec. 573 *a*, and 577, note 1. 2 Starkie Ev., *373. *Goodell v. Hibbard*, 32 Mich., 47.

MAXWELL, J.

This is an action to enforce the specific performance of an alleged contract for the conveyance of real estate. The

land in controversy is situated in Gage county, and the plaintiff is a resident of that county, while the defendant is a resident of California. The contract was made by certain real estate agents on behalf of the defendant, upon the authority of certain letters signed "Mrs. Julia A. Stafford." A decree was rendered in the court below in favor of the plaintiff. The defendant appeals to this court. It appears from the evidence that during the summer of 1879 a letter, of which the following is a copy, was delivered to Messrs. Somers & Schell, real estate agents, Beatrice.

MONTICELLO, NAPA CO., CALIFORNIA, June 11, 1879.

*Real Estate Agent, Beatrice, Neb. Dear Sir :* Not being acquainted with the name of a real estate agent in your place, you will excuse the omission. I have a farm in Gage county, Neb., which I am very desirous to sell, and want to put it into the hands of some agent who will attend to it promptly. I will sell it very cheap as I am in California sick, and need the money. It is known as the "Stafford farm" and has belonged to me and my husband, now deceased, over twenty years, you can see the deed recorded in the Beatrice clerk's office. It is situated on the Little Nemaha river. It is a fine farm, well watered, and well timbered, with plenty of rich bottom land. Several years ago, C. E. Moore, residing in the same neighborhood, offered me two thousand dollars for it, but I did not then wish to sell. I have lately offered it for eighteen hundred dollars, but if you take it in hand I would like for you to do the best that you can. G. Hillman, of Hooker, eight miles distant from my place, has charge of it, and has rented it to Peter Stockhouse. I would like to hear from you immediately, and if you will attend to this promptly, it is all that I can desire.

Yours very respectfully,

Address: MRS. JULIA A. STAFFORD,

Monticello, Napa Co., California.

To this the following letter was sent directed to "Mrs. Julia Stafford, Monticello, Napa county, California:"

Yours of the 11th inst. has fallen into our hands. We will take charge of your land and sell it to the best advantage as soon as possible. Please give us the terms upon which you are willing to sell. It is very hard to get all cash down for land. If you will take one-third down, and balance in one and two years at ten per cent on deferred payments, we could sell quicker no doubt. But give us your terms and we will go to work and sell as quick as possible. Yours,

SOMERS & SCHELL.

To this they received the following reply:·

MONTICELLO, NAPA Co., CAL., June 24th.

*Messrs. Somers & Schell, Beatrice, Nebraska:* Yours of June 18th, came promptly to hand to-day, and I hasten to reply. The place at $1,800.00 cash, would be very cheap. I would much prefer to sell at that figure for cash, than to get more and wait; but if you cannot sell at that figure for cash, I will take $2,500.00, one-third down, and the balance in one and two years at 10 per cent interest on remainder, with mortgage for security on the place. If possible, I would like to have it sold before the first of next September. The place is an uncommonly good one, and I am very anxious to sell. Please do the best you can, and thanking you for promptness in the matter, I am yours very respectfully,

MRS. JULIA STAFFORD,

Monticello, Napa Co., Cal.

In reply Somers & Schell sent the following,

Sept. 6, --9

*Mrs. Julia Stafford, Monticello, California. Dear Madam:* We have an offer from M. H. Gartrell, of $1,500.00, for your n. w. one-fourth 1 — 6 — 8, in this county. Will pay $500.00 cash, balance in five annual payments of $200.00 each, with 8 per cent interest. We tried to get better of-

fer out of him, and told him what your price was. We however write you in regard to the matter. Write us by return mail. Yours truly,

SOMERS & SCHELL.

The letter received in answer to the above is as follows:

MONTICELLO, NAPA CO., CAL., Sept. 12th, 1879.

*Messrs. Somers & Schell, Beatrice, Nebraska, Sirs:* Yours of Sept. 6th is just received. I think the price too low, but as I am in very needy circumstances and must have money, I have after much deliberation concluded to take it. I am anxious for you to sell it, and close the affair as soon as possible, because I need the money at present very much. Yours truly,

MRS. JULIA STAFFORD;

Monticello, Napa Co., California.

On receipt of the letter of Sept. 12th, Somers & Schell addressed a letter to the defendant at Monticello, California, containing a deed for her to execute to Mr. Gartrell, etc. To this letter they received the following:

MONTICELLO, NAPA COUNTY, Sept. 30th.

*Messrs. Somers & Schell :* Yours of the 16th of September, with the deed, was received by me a few days ago. Owing to the fact that there is no notary public or proper official to sign the deed before, near here, I have been unable to return it and will not be able to send it back for about a week from this day. I therefore thought proper to drop you a line, to let you know the cause of the delay. I may just mention here in this connection, that before sending the mortgage and also the notes, I wish you to have them recorded. Send the notes and mortgage to my address at Germantown, Colusa Co., Cal., in registered letters in care of T. C. Hillman.

Very respectfully,

MRS. JULIA STAFFORD,

Germantown, Colusa Co., Cal.

On the 3rd of October of that year, a letter dated at

Monticello, California, signed "Mrs. Julia A. Stafford," was sent to Messrs. Somers & Schell, saying that the deed for the land in question would be sent on the 7th inst. It is unnecessary to refer to the other letters set out in the record.

No deed for the land in controversy has been received, and this action was brought by the purchaser to enforce the contract.

The first objection made by the appellant is, that an action of this kind can only be brought where the defendant resides or may be summoned. But this objection is not well taken. An action to enforce specific performance of a contract for the conveyance of real estate is of two-fold character, viz: *in rem* and *in personam*. In the one case the decree of the court operates directly upon the land. In the other, where the court has jurisdiction of the parties, it may compel them to perform, although the land may be situated outside the state. Story Eq. Jur., secs. 743, 744. *Bailey v. Ryder*, 10 N. Y., 363. *Newton v. Bronson*, 13 Id., 587. *Gardner v. Ogden*, 22 Id., 327. *Cleveland v. Burrall*, 25 Barb., 532. *Fenner v. Sanborn*, 37 Id., 610. *Burrall v. Eames*, 5 Wis., 260. There is no doubt that an action may be brought against a non-resident in the county where the land in controversy is situated.

The second objection of the appellant is that the plaintiff has an adequate remedy at law in an action for damages. The rule contended for by the appellant undoubtedly applies to contracts for the sale of personal property, the reason being that damages in such cases are readily calculated on the market price of property such as wheat, corn, wool, etc., like quantities of the same grade being of equal value, and thus afford as complete a remedy to the purchaser as the delivery of the property. *Adderley v. Dixon*, 1 Sim. & Stu., 607. But the rule is a qualified one and is limited to cases where

compensation in damages furnishes a complete and satisfactory remedy. Story's Eq., S. 718, and cases cited in note 3. The jurisdiction of courts of equity to decree specific performance of contracts for the sale of real estate is not limited, as in cases respecting chattels, to special circumstances, but is universally maintained, the reason being that a purchaser of a particular piece of land may reasonably be supposed to have considered the locality, soil, easements, or accommodations of the land, generally, which may give a peculiar or special value to the land to him, that could not be replaced by other land of the same value, but not having the same local conveniences or accommodations. *Adderley v. Dixon*, 1 Sim. & Stu., 607, Story's Eq., sec. 746. Williard's Eq., 279. An action for damages would not, therefore, afford adequate relief.

The third objection is that there is no evidence as to the defendant's title to the land in controversy. There is a clear distinction between the case of a vendor seeking to compel a vendee to accept the vendor's title and perform the contract and that of a vendee resorting to an action in equity to require the vendor to perform. In the first instance, if the vendor cannot convey the title he professed to have and to have sold, the court will not compel the vendee to accept a less title than that contracted for; but this rule does not prevail where the vendee insists upon the performance of the contract, and is willing to accept the vendor's title. *Waters v. Travis*, 9 Johns., 450. *Sutherland v. Briggs*, 1 Hare, 34. White & Tudor's Leading Cases, 24.

The fourth objection is that there is no contract in writing. Our statute provides that "every contract for the leasing, for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the

lease or sale is to be made." Comp. St., 287. By the fourth section of the statute of frauds and perjuries, 29 Char. 2, it was enacted that "no action shall be brought whereby to charge any executor or administrator upon any special promise to answer damages out of his own estate; or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriages of another person; or to charge any person upon any agreement made upon consideration of marriage; or upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; or upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." The law is now well settled that under this statute the agreement need only be signed by him who is to be charged by it. *Seton v. Slade*, 7 Ves., 265. *Fowler v. Freeman*, 9 Id., 351. *Martin v. Mitchell*, 2 Jac. & W., 426. *Laythoarp v. Bryant*, 2 Bing. N. C., 735. *Ballard v. Walker*, 3 Johns. Cases, 60. *Clason v. Bailey*, 14 Johns., 484. *McCrea v. Purmort*, 16 Wend., 460. *Penniman v. Hartshorn*, 13 Mass., 87. *Thayer v. Luce*, 22 Ohio State, 62. *Justice v. Lang*, 42 N. Y., 493. *Lowber v. Cormit*, 36 Wis., 176.

Chancellor Kent, in *Clason v. Bailey*, said that the weight of the argument was in favor of the construction that the agreement concerning lands should be mutually binding, and the same views were expressed by Verplank, senator, in the court of errors in *Davis v. Shield*, 26 Wend., 362, but both agreed that the law was well settled the other way both in this country and England. A change to conform to the views of Chancellor Kent was afterwards recommended by the revisors of the New York

statutes, but the legislature rejected the alteration and adhered to the old words. See Willard's Eq., 267–8. The same objection was made in the case of *Laythoarp v. Bryant*, where it was said that unless the agreement was signed by both parties there would be a want of mutuality, but the chief justice said, "Whose fault is that? The defendant might have required the plaintiff's signature, but the object of the statute was to secure the defendant's. The preamble runs, "For prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury," and the whole object of the legislature is answered when we put this construction upon the statute. Here, when the party who has signed is the party to be charged, he cannot be subject to any fraud. And there has been a little confusion in the argument between the consideration of an agreement and the mutuality of claims,   *   *   *   *   I find no case, nor any reason in saying that the signature of both parties is that which makes the agreement."

It is sufficient if the contract or memorandum thereof is signed by the party to be charged, that is, by the vendor; but in this case the testimony tends to show that Somers and Schell were the agents of both parties, or middle men, and that, as such agents, they made the proposition of the plaintiff so that he would be bound by their acts in that regard. And, independently of such agency, bringing this action is an affirmance of his liability. If the signature of Mrs. Stafford is genuine we therefore hold that the contract is sufficient to entitle the plaintiff to recover.

A more serious question, however, arises as to the evidence of the signature of the defendant. The admission of the letters was objected to by the defendant. The entire business was carried on by correspondence, and there is no testimony in the record tending to show that these letters were written or signed by the defendant or by her

direction. There must be testimony tending to prove that the letters purporting to be written by the defendant were written by her or by her direction, or that she was a resident at that time of Monticello, California, so that the letters received in due course of mail in answer to letters sent to the alleged writer may be presumed to have come from her. As the testimony fails in this regard the judgment of the district court must be reversed. The agents seem to have acted in good faith, and if the letters of the defendant are genuine the contract should be enforced. The cause is remanded for further proceedings.

REVERSED AND REMANDED.