PEOPLE ex rel. BATT et al. v. RUSHFORD et al.. Town Assessors.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. REFEREE—ADMISSION OF EVIDENCE.

A referee, appointed in certiorari to take testimony as to the valuation of certain assessed property, is only an aid to the court; and hence, in the admission of evidence by him, the rules will not be adhered to as strictly as in a common-law action tried to a jury.

2. SAME—ADMISSION OF INCOMPETENT EVIDENCE—EFFECT.

When the record discloses that the admission of incompetent evidence by a referee has not seriously prejudiced the complaining party, and that the judgment of the trial court thereon should be affirmed even if the objectionable evidence were wholly eliminated, the judgment need not be reversed because such testimony was included in the record.

3. TAXATION—ASSESSMENT—VALUATION—EVIDENCE.

Evidence of the actual price paid at bona fide sales of real estate in a town is competent in certiorari proceedings to review the assessment on property in the town.

4. SAME—INCOMPETENT EVIDENCE.

Where it is not shown that a sale referred to in a conveyance was a bona fide sale, and that the consideration named therein was the actual one between vendor and vendee, such conveyance is not competent evidence of the value of the property described, in certiorari to review an assessment thereon.

5. SAME—GROSS NEGLIGENCE OF ASSESSORS—COSTS.

Where the assessors of a town, who were farmers, without special knowledge of the value of railroads, followed the precedent set by their predecessors in raising the assessment of a railroad, though not relatively as much as on other property, but at the review, and without special information, reduced it somewhat, they were not guilty of gross negligence in making the assessment, even though it was much too high, so as to render them chargeable with costs.

Appeal from Special Term, Montgomery county.

Certiorari by the people of the state of New York, on the relation of Charles R. Batt and William Lummis, trustees of the Ogdensburgh & Lake Champlain Railroad Company, and another, to Andrew H. Rushford and others, as assessors of the town of Clinton, to review an assessment on relators' property. From a judgment reducing the assessment and taxing the costs to defendants, they appeal. Modified.

Argued before PARKER, P. J., and KELLOGG, CHASE, and CHESTER, JJ.

Shedden & Kellogg (L. L. Shedden, of counsel), for appellants.

Badger & Cantwell (John P. Badger, of counsel), for respondents.

CHASE, J. The town of Clinton is situated in the northern part of Clinton county, adjoining the Canada line. It contains 40,656 acres, consisting principally of wooded and rough farming land. It had by the census of 1895 a population of 2,377. The town contains two small villages, Cherubusco and Clinton Mills, each of which has a railroad station, a post office, and general stores. In the town is a steam lumbering mill and two or three creameries. The assessment roll for 1898 contains the names of 350 resident real property owners, and 538

¶ 3. See Evidence, vol. 20, Cent. Dig. § 416.

distinct pieces of real property are assessed. The total real property assessment for the year 1898 was 236,585. The property of the relator situated in the town of Clinton consists of an old single-track railroad passing through the town a distance of 9.82 miles, assessed at $95,000; two miles of side track, assessed at $5,000; two cheaply constructed depots, one assessed at $425, and the other at $375; a turntable, assessed at $180; a water course, consisting of about one acre of land, assessed at $200; a woodyard, consisting of about four acres of land, assessed at $40; and an unused gravel bank, entirely disconnected from the other property of the relators, and containing about 17 acres of land, assessed at $115. The total assessment against the relators as made by the defendants was $101,335.

The relators, being dissatisfied with their assessment, appeared before the assessors on the day fixed for the review of their assessments, and made application for a reduction of their assessment. The written statement then filed with the defendants by the relators stated that the assessment made against them was excessive and unequal in that their property was assessed at a higher proportionate valuation than the other property on the same assessment roll mentioned, and also that the main line of their railroad was not worth to exceed $6,400 per mile, and their side track was not worth to exceed $1,000 per mile. The assessors thereupon deducted $4,000 from the assessment against the main line of railroad, leaving the total assessment against the relators $97,335, being about 41 per cent. of the entire assessments of said town.

Relators thereafter made an application for a writ of certiorari to review said assessment, which was granted, and the defendants made their return thereto. The issues were by consent referred to a referee to take evidence upon the several matters in issue, and report the same to the court with his findings of fact and conclusions of law thereon. Evidence was taken by said referee, and a report was made to the court, by which report the referee found that the property of the relators in the town of Clinton could be reproduced for $103,640, and that the real property in the town of Clinton, other than the property of the relators, was assessed in the aggregate at a sum not exceeding 65 per cent. of its full value, and he also found, and decided as conclusions of law, that the assessment against the relator should be reduced to the sum of $67,636, and that the defendants acted with gross negligence in making such unequal assessment.

The court at special term, after deliberation, sustained the findings and conclusions of the referee, and judgment was entered accordingly. The determination of this controversy on the merits is wholly one of fact.

We have carefully examined the ponderous record herein, and in our judgment there is sufficient material and competent evidence to sustain the findings so made by the referee and confirmed by the court.

The appellants contend that incompetent and immaterial testimony was admitted on the trial, and considered by the referee and the court, to their prejudice. We assume that, not alone on the trial of common-law actions, but also on hearings in proceedings of this kind, parties

are entitled to be confronted with competent and material testimony; and if the result of a trial or hearing has been influenced and dominated or is dependent upon incompetent and immaterial testimony, the judgment therein ought to be reversed.

The referee appointed in proceedings of this kind is only an aid to the court, and in the admission of testimony by such referee the rules are not held with the same strictness as upon the trial of common-law actions before a jury.   People ex rel. R. R. Co. v. Keator, 36 Hun, 592;  People ex rel. O'Shea v. Lantry, 44 App. Div. 392, 60 N. Y. Supp. 1009.

Where it can be seen that the reception of incompetent testimony has not seriously prejudiced the appellant, or materially affected his rights, and where the judgment should be sustained by this court if such objectionable testimony were wholly eliminated, the judgment as rendered is not necessarily to be reversed by reason of its inclusion in the record.   While we are of the opinion that the judgment herein should be sustained, in view of pending proceedings, we desire to condemn the practice of the parties hereto in prolonging the proceedings beyond necessary limits by offering immaterial and sometimes, perhaps, incompetent testimony, tending only to confuse the merits of the controversy.   The testimony of experts is frequently necessary, and their testimony may be the most available as well as the most satisfactory and conclusive to be offered to a referee and court in the determination of matters of assessment, but the testimony of specially and illy prepared nonresident real estate dealers or contractors, not having special knowledge of the value of the property under consideration, is of little or no value to the court.   The testimony of relator's witnesses Murtagh, Kelley, and Lynch come under this condemnation.

Evidence of the actual price paid on bona fide sales is some evidence of value.   It was said in Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032:

"In the ordinary case of purchase and sale of property, the fact that the purchaser and seller have met and agreed upon a price. and actually bought and sold the property at that price, ought to be, in the nature of things, some evidence of the value of that property which has thus changed hands in a bona fide transaction."

The consideration named in conveyances is too uncertain, however, to be considered even prima facie evidence of the value of the property described in such conveyance.   In People ex rel. Mayor, etc., v. McCarthy, 102 N. Y. 630, 8 N. E. 85, the court say:

"No rule of law requires the true consideration paid upon a transfer of land to be inserted in conveyances of real estate, and it is within the common knowledge of all conveyancers that the amount stated therein is often determined by fanciful, capricious, and arbitrary considerations, which render it utterly unreliable as evidence of value."

In People ex rel. Carter v. Williams (Sup.) 20 N. Y. Supp. 350, referring to the consideration named in a number of conveyances as evidence of the value of the property described therein, the court say:

"The evidence derived from the sales list was largely relied upon by the relator.   This evidence was competent only because it was made so by the board of assessors themselves. and is not common-law evidence."

We conclude, therefore, that the conveyances received in evidence, where the sales therein referred to were not thereafter shown to be bona fide, and the consideration named, the true consideration as between buyer and seller, uninfluenced by special circumstances, should have no weight in sustaining the findings of fact.

Direct evidence of the value of property by competent witnesses is always admissible. The relators called a large number of resident real property owners and taxpayers of the town of Clinton, and, although they were asked to testify against their interests, gave testimony which, if believed, shows that the real property of the town is only assessed for a fraction of its full value. As illustrative of the testimony so given by them, we give a summary of the testimony of four such witnesses.

One witness, whose farm was assessed at $735, testified that his farm contained 232 acres, on which was a house, one barn, seventy feet long, sheds, a horse barn, and a creamery building; that the house cost $1,000, and barns between $700 and $800, and that his farm was worth $3,000. On this farm he kept 25 cows, and that year had raised 1,000 bushels of potatoes on 4 acres of land.

Another witness, whose farm was assessed at $500, testified that his farm contained 213 acres; that he kept horses, cattle, and sheep. His buildings were insured at $1,000, and he stated that the fair value of the farm was from $1,800 to $1,900.

One witness, the owner of a village house and lot assessed at $200, testified that he purchased it five years ago for about $1,000, and that the house was now insured for $1,000.

Another witness, whose farm was assessed at $835, testified that there was on his farm a house and three large barns, and that he raised that year between 1,200 and 1,300 bushels of potatoes, 300 bushels of oats, and that he kept 20 cows, and that his farm was worth $3,000.

Another witness, whose farm was assessed at $310, testified that his house was old; that he had on his farm two large barns; and that he raised that year 1,200 or 1,300 bushels of potatoes and other crops; and that his farm was worth $1,500 to $1,800.

The first of these witnesses mentioned, who had been supervisor of the town, also testified:

"I think my property is assessed as high correspondingly as the other people on the roll; am assessed just as much proportionately as anybody."

The appellants also insist that the court erred in finding that they acted with gross negligence in assessing the relator's property. Costs could not have been charged against them without such finding. The statute expressly provides that costs shall not be allowed against the officers whose proceedings are reviewed, unless it appears to the court that they acted with gross negligence, or in bad faith, or with malice in making the assessment complained of. It is suggested that defendants in 1898 largely increased the assessment against the relators' property. The record shows that the assessment against the relators' property was $16,035 more in 1898 than it was in 1896; but it also appears that the total assessment of the town in 1898 was

$50,965 more in 1898 than it was in 1896, so that the proportion that the relators' assessment bore to the entire assessment of the town in 1898 was considerably less than it was in previous years, and less than it had been in more than 20 years previous thereto. Defendants, at the time of making the assessment in 1898, did not have before them the record that is now before us. They are farmers, without special knowledge of the value of railroads. They followed in substantially the footsteps of their predecessors. The changes made by them were to the advantage of the relators. Detailed information in regard to the value of the relators' property was not given by the relators to the defendants on the day appointed by them for the review of their assessments. We think the finding that the defendants were guilty of gross negligence in making the assessments severe and unwarranted.

That part of the judgment and order reducing the relators' assessment should be affirmed, and that part of the judgment and order allowing costs against the defendants as assessors of the town of Clinton should be reversed, without costs to either party in this court. All concur.