# Hughes v. Antill, Appellant.

*Equity—Equity practice—Equity rules—Notice to appear and answer.*

Where the defendant in an equity suit enters an appearance, files an answer and has a trial upon the merits, he cannot, after a decree has been entered against him, object that the notice indorsed on the bill was not in conformity with the equity rules.

*Statute of frauds—Memorandum in writing — Principal and agent—Parol authority—Option to purchase real estate.*

An option to purchase real estate is not within the statute of frauds, and therefore an agent to take such option is not required to have written authority from the principal.

*Stamps—Revenue stamps—Act of congress of June 13, 1898—Option to purchase real estate.*

An option to purchase real estate does not belong to the class of instruments which, by the act of congress of June 13, 1898, requires an internal revenue stamp.

*Option—Real estate—Fraud.*

Where an option to purchase real estate is by its terms assignable to any person irrespective of the bargainor's assent, it is immaterial by whom the agent to take the option was employed, or through what medium the contract after its execution reached the hands of the persons exercising the option; and it is also immaterial as to what was the identity or residence of the person named as bargainee.

*Specific performance—Option—Variance.*

Where an option has been executed in duplicate, the person given the option cannot, on an appeal from a decree of specific performance against him, allege as a ground for reversal a variance in the two papers in the description of the subject-matter, where the record shows that the decree followed the description contended for by the appellant, and admitted by the appellees to be in accordance with the oral agreement on which the option was based.

*Specific performance—Option—Agreement by husband—Husband and wife.*

The fact that a wife did not join her husband in an option to sell real estate will not relieve the husband of the duty of specific performance, if the option is exercised against him. The purchasers may waive full performance, and accept such title as the husband can give.

*Equity—Specific performance—Tender of purchase money.*

A vendee before suing for specific performance on his equitable title, either at law or in equity, must tender the purchase money in accordance with the contract. In equity, the court may secure the rights of both parties by requiring the execution of a deed by the vendor, and payment by the vendee on receiving it; and this is the usual practice. Hence in this case it is unnecessary for the vendee to have the money in court at the trial.

*Vendor and vendee—Tender of purchase money—Interest.*

Where a vendee of land has tendered the purchase money to the vendor, and the latter has refused to accept it, interest cannot be subsequently demanded by the vendor after a decree for specific performance, except from the date of tender of the deed in conformity with the decree.

Argued April 20, 1903. Appeal, No. 38, April T., 1903, by defendants, from decree of C. P. Greene Co., No. 38, on bill in equity in case of W. T. Hughes and J. B. Orndoff v. Harvey Antill and Elizabeth Antill. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for specific performance.

From the record it appeared that on August 31, 1899, Harvey Antill and his wife executed in duplicate an option to sell coal to J. S. White, his "heirs and assigns." Mrs. Antill did not acknowledge the option. In one of the copies the agreement was to sell "all coal and coal rights of Pittsburg or River vein." In the other copy the language was "all coal and coal rights of whatever kind." The former language expressed the true agreement of the parties, and the variance was due to a mistake of the scrivener.

The court, CRAWFORD, P. J., found other facts to be as follows :

3. Fisher, in securing this option, acted under the instruction of Lot L. Thomas, in whose employ he was at the time. J. S. White, the party to whom the option was given, was connected with Thomas in various oil, gas and coal transactions in this county and in West Virginia, sometimes as an active and sometimes a silent partner. In options taken in this section, this and other options were taken in the name of J. S. White.

4. On February 7, 1900, J. S. White executed a power of attorney to R. E. Kent of Waynesburg, Pa., under the authority of which Kent, as attorney in fact for J. S. White, assigned and transferred this option to J. B. Orndoff and W. T. Hughes, this power of attorney being duly recorded.

5. On August 30, 1900, W. T. Hughes, one of the purchasers of this option and one of the plaintiffs in this case, went to Mr. Antill's residence, taking with him $606 in legal tender money. With this he made a tender to Mr. Antill, who refused to take or count the money, saying that he would not make a deed for the coal. The plaintiffs, on discovering that the paper in Antill's possession provided for the conveyance of the Pittsburg or River vein, offered to take a deed for this alone. Mr. Antill refused to make any conveyance, and when the plaintiff went to make the tender aforesaid, a son of Mr. Antill forbade them entering the yard. The conduct of Mr. Antill shows conclusively that he did not at any time intend to comply with the option.

6. On July 19, 1900, the plaintiffs gave written notice to Harvey Antill that they elected to accept the purchase of his coal on the terms of the option, and left copy of said notice with him.

7. The defendants have never prepared or submitted any abstract of title or offered to execute any deed. They have refused to comply with the option or accept the money tendered them by the plaintiffs. The plaintiffs on the other hand have shown themselves ready and willing to accept a proper title for the Pittsburg or River vein of coal on their part, and have been ready and willing to pay for the same according to the terms of the option.

8. Mrs. Antill while signing the option in question never formally acknowledged the same as her act and deed.

The court entered a decree of specific performance.

*Error assigned* among others was the decree of the court.

*James J. Purman,* for appellants.—The notice indorsed on the bill does not conform to the rule. The question was raised at the proper time in the answer, and ought to have resulted in the dismissal of the bill: Gibbons's Appeal, 104 Pa. 587; Cassidy v. Knapp, 167 Pa. 305; Philadelphia v. McManes, 17 Phila. 50; Etting v. Levy, 10 Phila. 139; Cooke v. C. D. & P. Tel. Co., 21 Pa. Superior Ct. 43; Forward School District's App., 56 Pa. 318.

Fisher's agency not being in writing he could make no contract which would bind his principal: Twitchell v. Phila., 33 Pa. 212; Patton v. Develin, 2 Phila. 103; Bodine v. Glading, 21 Pa. 50.

Plaintiffs' allegata and probata were at variance: Harris v. Knickerbacker, 5 Wend. 638; Phillips v. Thompson, 1 Johns. Chan. 131; Hammer v. McEldowney, 46 Pa. 334; Mellon v. Davison, 123 Pa. 298; Soles v. Hickman, 20 Pa. 180; McCoy v. Brunot, 183 Pa. 105.

The stamp act was violated: McMasters v. Penna. R. R. Co., 3 Pitts. 1; Voight & Co. v. McKain, 2 Pitts. 522; Schuylkill Plush, etc., Co. v. Shappell, 11 Pa. Dist. Rep. 554.

Tender was not kept up and, if performance is decreed, defendants are entitled to interest: Sheredine v. Gaul, 2 Dall. 190; Randall v. Mulley, 1 Lacka. Jur. 211; Minsker v. Morrison, 2 Yeates, 344; Gore v. Kinney, 10 Watts, 139; Bell v. Clark, 111 Pa. 92; Orne v. Kittanning Coal Co., 114 Pa. 172.

*J. W. Ray,* of *Ray & Axtell,* for appellees.

OPINION BY SMITH, J., October 5, 1903:

The errors alleged in the specifications relating to the form of notice are not properly assigned. Furthermore the form of notice given in this case is not set forth in connection with any specification, hence we cannot determine the question of its conformity with the equity rules. But aside from this, they are without merit. The copy of the bill, with the indorse-

ment of notice to appear, provided by the equity rules, is a substitute for the subpœna issued under the earlier practice. In character, purpose and effect, it does not differ from a summons at law. It is the mandate to the defendant to appear. If he deems the form or service defective, he should make objection in proper form instead of appearing. If he appears to the action without objection, it is a waiver of such defects, as fully as an appearance in an action at law is a waiver of defects in the form or service of the summons. A defendant cannot be allowed to play fast and loose with the process of the court; he cannot appear in obedience to it, and take the chances of success on trial, and on failure be heard to allege that he was not legally required to appear. In the present case, an appearance for the defendants was regularly entered on præcipe of their solicitor; they asked and obtained an extension of time for answering; their answer was filed; they ruled the plaintiffs to reply; and on trial they offered evidence on the matters at issue. In one paragraph of the answer, they aver that the notice indorsed on the bill is not in conformity with the equity rule respecting it, but the record discloses no motion based on this defect. In Cassidy v. Knapp, 167 Pa. 305, where the like defect appeared, the first step on the part of the defendant was a motion to dismiss the bill by reason of the defect, and for a denial of this motion the decree was reversed. In Cooke v. Tel. Co., 21 Pa. Superior Ct. 43, while a similar defect was, with others, considered by this court, the decree was reversed and the bill dismissed on the merits. But the action of the defendant in that case was a waiver of this defect, and he was in court, without qualification, and could not have been heard to allege that the notice to appear was defective and need not have been regarded: Ins. Co. v. Storrs, 97 Pa. 354; Jeannette Borough v. Roehme, 9 Pa. Superior Ct. 33.

It was not necessary for the agent to have written authority from the principal to contract for the option shown in the present case: Corson v. Mulvany, 49 Pa. 88; Smith's Appeal, 69 Pa. 474; Yerkes v. Richards, 153 Pa. 646. The contract was not designed to vest in the principal any estate in the land, and would have vested none had the agent's authority been in writing, or had the contract been signed by the principal in person. The principal's signature would have added nothing

to the appellant's rights under the contract as executed.   The
appellant's contention as to lack of mutuality, and the principal's
right to repudiate the contract because the agent's authority
was in parol, are without foundation.   There was nothing for
the bargainor to enforce, and nothing for the bargainee to re-
pudiate.   The former could not compel acceptance of the land,
and the latter could not obtain it without paying the price.
The only mutuality contemplated was the right of the one party
to call for the purchase money when the other called for a con-
veyance.   These rights are given by the contract, and were all
that the parties had in view when contracting.

Neither the contract nor the assignment belonged to the class
of instruments which, by the act of congress of June 13, 1898,
required an internal revenue stamp.   Such stamps were neces-
sary only on instruments conveying an interest or title, while
in the present case the contract vested and the assignment
transferred no present interest or title, but merely a conditional
right to demand a conveyance within the time limited.

The allegation of fraud on the part of the agent, in obtaining
the option, is not sustained by the evidence.   There is nothing
to show in what manner the defendants were defrauded, or
that any undue advantage was taken of them in fixing the
terms of the contract.   The identity or residence of the person
named as bargainee is not material.   It does not appear that
the bargainor made any stipulation on these points, and by the
terms of the contract the option was assignable to any person,
irrespective of the bargainor's assent.   Nor is it material by
whom the agent was employed, or through what medium the
contract, after its execution, reached the hands of the plaintiffs.
The only person in whom the contract vested any rights was the
bargainee therein named.   These rights have passed by assign-
ment to the plaintiffs, and are not affected by any relations be-
tween the agent and other persons.

The contract was executed in duplicate, except as to a vari-
ance in the description of the subject-matter, which appears to
have arisen from inadvertence and was fully explained on the
trial.   The decree follows the description contended for by the
appellant, and admitted by the plaintiffs to be in accordance
with the oral agreement on which the option was based.   Doubt-
less the proceeding would have been more regular had the

plaintiffs moved to amend the bill in conformity with this description, and as such amendment might properly have' been made below, we may treat the bill as thus amended here.

Though the appellant's wife, not having acknowledged the contract, cannot be required to convey her interest, this does not relieve her husband from the obligation of conveying his own interest, the plaintiffs being willing to accept it in satisfaction of the contract. They may waive full performance, and accept such title as the husband can give : Burk's Appeal, 75 Pa. 141; Harrigan v. McAleese, 1 Mona. 450 (16 Atl. Repr. 31).

A vendee, before suing for specific performance on his equitable title, either at law or in equity, must tender the purchase money in accordance with the contract. In ejectment, he must also bring the money into court, that upon a verdict in his favor the vendor may receive payment. He cannot have a verdict conditioned on subsequent payment: Dwyer v. Wright, 162 Pa. 405; Bell v. Clark, 111 Pa. 92. The effect of a verdict is to give him the land unconditionally, and to secure the purchase money to the vendor it must be within the grasp of the court. In equity, however, the court may secure the rights of both parties, by requiring the execution of a deed by the vendor, and payment by the vendee on receiving it; and this is the usual practice. Hence it is unnecessary for the vendee to have the money in court at the trial, and the plaintiffs here were not required to keep up the tender to entitle them to a decree of specific performance.

The trial judge has found, as a fact, that the purchase money was tendered to the vendors in conformity with the contract, and his finding is sustained by the evidence. This disposes of the appellant's claim to interest on the purchase money from the date of the tender. Interest is exacted as the penalty of default, and here the plaintiffs were in no default. On the contrary, the default has been on the part of the defendants. Instead of being entitled to interest, their default left them, at the time of bringing suit, without a right to demand even the principal, and this can now be claimed only on tender of a deed in conformity with the decree.

Decree affirmed.