# H. C. THEOPOLD v. E. F. CURTSINGER.[1]

January 28, 1927.

No. 25,733.

**Section 8456 does not prevent tenant asserting counterclaim for damages caused by landlord's failure to repair rooming house.**

1. Under the circumstances related in the opinion, G. S. 1923, § 8456, providing that an oral agreement which by its terms is not to be performed within a year, is unenforceable, did not preclude the defendant from asserting a claim for damages caused by the plaintiff's failure to repair a rooming house occupied by the defendant under an oral lease from plaintiff.

**Terms of oral agreement to repair definite enough to bind landlord who had not made any repairs.**

2. The terms of an oral agreement to repair a house were sufficiently definite and certain to bind the landlord who had failed to make any repairs whatever.

**Measure of damages for breach of such contract.**

3. The measure of damages for the breach of such a contract is the difference between the rental value of the premises in their actual condition and their rental value in the condition in which the landlord agreed to put them. The amount paid as rent furnishes a basis for a finding of rental value if the repairs had been made.

Evidence, 22 C. J. p. 180 n. 61.
Frauds, Statute of, 27 C. J. p. 321 n. 86; p. 389 n. 99; p. 392 n. 20.
Landlord and Tenant, 36 C. J. p. 147 n. 78; p. 166 n. 94.

See note in 53 L. R. A. 101; 28 A. L. R. 1495, 1542; 16 R. C. L. 1056; 5 R. C. L. Supp. 921.

Defendant appealed from an order of the municipal court of St. Paul, Olson, J., denying his motion for a new trial. Reversed.

*P. D. Scannell* and *Harry S. Locke,* for appellant.

*Edward A. Knapp,* for respondent.

[1]Reported in 212 N. W. 18.

LEES, C.

This action was brought to recover a month's rent of a rooming house. The defendant counterclaimed for damages for plaintiff's failure to make certain repairs. At the close of the evidence the court dismissed the counterclaim and directed the jury to return a verdict for plaintiff for the amount of his claim. This appeal was taken from the denial of defendant's motion for a new trial.

Plaintiff pleaded an oral lease of the house for the period of one month and from month to month thereafter at a rental of $32.50 a month, payable in advance on the first day of each month during the term of defendant's occupancy, and that defendant had occupied the house for the month of August, 1922, and failed to pay the rent for that month. Defendant answered, admitting his occupancy of the premises under the oral lease, and alleged that in the month of July, 1921, when he was occupying the house as plaintiff's tenant, plaintiff raised the rent to be paid after September 1, promising to paper the rooms and halls, varnish the woodwork and repair leaks in the roof, and that in reliance upon the promise defendant paid the increased rental until August, 1922, when he moved out of the house because of plaintiff's continued failure to make the repairs.

The evidence tended to show that in July, 1921, defendant was occupying the house under a written lease from plaintiff, which expired on September 1, and was paying a rental of $30 a month; that plaintiff notified him that if he remained after September 1 he would have to pay rent at the rate of $32.50 a month, and that defendant agreed to hold over and pay the rent demanded in consideration of plaintiff's promise to make the repairs in question. In the course of his cross-examination, defendant was asked these questions:

Q. "At the time that you talked about making this agreement for the oral lease of this property was anything said as to the length of time you were to rent the property for?

A. "Why sure I was to have it for a year.

Q. "For a year from the first of September, 1921?

A. "Yes.

Q. "And you made that agreement in July of 1921 or in August, 1921?

A. "July."

Defendant paid rent at the rate of $32.50 a month until August, 1922. On or about the twelfth day of the month he moved out without paying the month's rent, because plaintiff had failed to make the promised repairs.

Plaintiff advances three propositions, any one of which, if sound, would justify the dismissal of the counterclaim. The first is that, by reason of G. S. 1923, § 8456, the agreement to repair is unenforceable because it was not to be performed within a year; the second, that the agreement was so indefinite and uncertain as to be unenforceable; and the third, that defendant failed to prove damages.

1. Plaintiff cites Cram v. Thompson, 87 Minn. 172, 91 N. W. 483, in support of the first proposition. In that case the owner of a building sued for damages, alleging that he had an oral agreement with the defendant for the execution of a written lease for the term of one year to begin at a future date, and that defendant refused to execute the lease. It appeared that plaintiff had made improvements requested by defendant and had declined to renew leases with tenants then in possession, and that after defendant broke the agreement plaintiff leased part of the building to a third party. The court said that the principle that part performance removes an oral agreement from the operation of the statute of frauds is applicable only where the action is one in equity for specific performance, and that plaintiff's right to enforce the agreement was lost when he disabled himself from performing his part of it by making the lease to a third party.

We think Cram v. Thompson is not controlling for the following reasons: Plaintiff brought and tried the action on the theory that defendant was a tenant from month to month, and the evidence would have permitted the jury to find that he was. See G. S. 1923, § 8193. Defendant's answers to the questions above set out would permit a finding that the lease was for the term of one year and that the contract was not to be performed within one year from the date

when it was made. If defendant was a tenant from month to month, the statute of frauds does not enter into the case at all and, since the jury might have found that he was, a verdict should not have been directed because of the statute. But even if defendant was to become a tenant for the term of one year from and after September 1, 1921, his right to enforce his counterclaim would not be lost by reason of the statute. It is an established rule that the statute has no application to an executed contract. Dun. Dig. § 8852; Nelson v. McElroy, 140 Minn. 429, 168 N. W. 179, 587. Defendant was in possession under a written lease until September 1, 1921, retained possession thereafter under the oral lease, and paid rent for 11 months in accordance with its terms. He remained in possession until August 10, 1922, and so became liable for the rent for that month. Certainly he was in no position to disavow the contract or escape payment of rent for August on the ground that the lease came within the statute of frauds.

On the other hand, plaintiff, having accepted rent for 11 months under the oral lease and having then sued to compel payment of the rent for the last month of the term, could no longer be heard to say that the lease was not binding upon him. It is a fair inference that defendant would not have continued to occupy the house after September 1, 1921, and pay rent at a higher rate had it not been for plaintiff's promise to repair. Having acted to his detriment in reliance on the promise, defendant may well say that plaintiff is now estopped from asserting that the lease came within the statute of frauds. Therefore it cannot be held as a matter of law that the counterclaim was unenforceable because of the statute.

2. The terms of the agreement were sufficiently definite to enable the jury to determine the nature and extent of the repairs. Formal specifications were not necessary. A landlord's promise to paint and paper the rooms in the house occupied by his tenant and to stop up leaks in the roof binds the landlord to do something. He cannot escape the consequences of a failure to make any repairs whatever on the plea that their nature was not specified definitely and certainly.

3. The measure of damages for a landlord's failure to make repairs as agreed is the difference between the rental value of the premises in their actual condition and their rental value in the condition in which the landlord agreed to put them. Long v. Gieriet, 57 Minn. 278, 59 N. W. 194; Force v. Gottwald, 149 Minn. 268, 183 N. W. 356; Griebe v. Hagen, 149 Minn. 399, 184 N. W. 19.

The defendant testified that the rental value of the premises as they were was $15 or $16 a month. He attempted to prove the rental value, if the repairs had been made, by his own testimony, but the court ruled that he was not qualified to express an opinion. He then called a witness who was qualified and put a hypothetical question, which was not properly framed. An objection to the question was sustained and defendant did not offer any other proof. But we think the fact that the rent was fixed and paid at the rate of $32.50 a month furnishes a basis for a finding of rental value if the repairs had been made. The amount paid for an article has been held to be some evidence of its value. Minneapolis H. W. v. Bonnallie, 29 Minn. 373, 13 N. W. 149. A leading case lays down the rule that the price actually and in good faith paid upon a contract of sale deliberately entered into tends to show the probable worth of the property sold. Ferguson v. Clifford, 37 N. H. 86. See also Kirkwood v. Perry T. L. & I. Co. 178 Iowa, 248, 159 N. W. 774; People v. Rushford, 81 App. Div. 298, 80 N. Y. S. 891; Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; Cherry Bros. v. Christian County, 146 Ky. 330, 142 S. W. 726; Gate City Terminal Co. v. Thrower, 136 Ga. 456, 71 S. E. 903; 22 C. J. p. 180.

Everyone knows that articles are sometimes sold at prices above or below their true market value. But under ordinary circumstances the price agreed upon by the buyer and seller is some evidence of the reasonable worth of the article. By analogy the amount agreed upon as the rent of a house when repaired is some evidence of the rental value when the repairs are made. Standing alone it may furnish a sufficient basis for measuring damages, and in this case we think it was enough to take the question of damages to the jury.

It was not claimed here or in the court below that the failure to repair worked a constructive eviction, hence we do not consider the effect of defendant's continued occupancy of the house and the payment of rent as a possible waiver of his claim for damages. See Greenstein v. Conradi, 161 Minn. 234, 201 N. W. 602, and cases cited.

The order is reversed and a new trial granted.