MARK SHAUGHNESSY AND ANOTHER v. BERNT EIDSMO AND ANOTHER.[1]

June 7, 1946.

No. 34,221.

[1]Reported in 23 N. W. (2d) 362.

*Robins, Davis & Lyons* and *A. W. Uhl,* for appellant.
*John J. Stoller,* for respondents.

MATSON, JUSTICE.

In an action for specific performance, defendant Bernt Eidsmo[2] appeals from an order denying his motion for a new trial.

Plaintiffs, husband and wife, on April 5, 1943, by oral agreement, leased from the defendant Bernt Eidsmo a dwelling house and lot described as follows:

The north 28 feet of lot 3 and the south 24 feet of lot 2, both in block 18, Roslyn Park Addition, also known as and numbered 4852 N. E. 6th Street, Columbia Heights, Anoka county, Minnesota,

for a term of one year from May 1, 1943, at a rental of $47.50 per month, and, in consideration for the making of said lease and as a part thereof, defendant agreed to give, and gave, plaintiffs an option to purchase said property at the expiration of the lease term at a price between $4,750 and $5,000 on a contract for deed, subject to the proviso that plaintiffs should be allowed as a credit on the pur-chase price the total rent paid for the lease term with the balance of the purchase price to be paid in monthly installments of $32.50, inclusive of unpaid taxes and five percent interest per annum on the unpaid balance. Defendant also agreed to sell plaintiffs a stove for $119.50, payable in installments of four dollars per month with-out interest. Plaintiffs entered into possession May 1, 1943, and continued in possession throughout the one-year lease term ending April 30, 1944, and paid during said term a total rental of $570 and a total of $48 on the purchase price of the stove. At and be-fore the expiration of said lease term, plaintiffs notified defendant that they wished to exercise their option of purchase according to the terms thereof, and on several occasions they demanded of de-

---

[2] Action against defendant Ellen Eidsmo was dismissed below, and this appeal is taken by the remaining defendant.

fendant that he deliver a contract for deed as agreed. On each of these occasions, defendant told plaintiffs that he did not have time to have a contract drawn, but that his word was good and they should not worry. Plaintiffs fully performed their part of the option agreement and have at all times been ready, willing, and able to execute a contract for deed. Since the expiration of the lease term, plaintiffs have continued in possession, and from May 1, 1944, to May 1, 1945, have paid an additional $570 on the purchase of said property and a further sum on the purchase of the stove. When the option and lease agreement were made, the premises were subject to a $4,200 mortgage, of which no mention was made to the plaintiffs and in regard to which no agreement was made that plaintiffs should assume said mortgage or take the property subject to the same.

Contrary to the above facts as established by the findings of the trial court, defendant contends that he had given no option, but that he had assured plaintiffs that at the end of the lease term he would give them the first opportunity to buy the premises for something in excess of $5,200, subject to a certain mortgage, on which the monthly payments were about $32, and that he would give them credit for the rent paid after making deductions for interest, taxes, and insurance. Defendant alleges that plaintiffs have done nothing to exercise any option, but that they merely asked him for a written lease and not for a contract for deed.

The trial court decreed that plaintiffs have a vendees' interest in the property and that they were entitled to a contract for deed from defendant specifying a purchase price of $5,000, subject to a credit on said price for the gross sum of all rents and purchase money paid, with a proviso that the balance of the price should be paid in monthly installments of $32.50 each, inclusive of taxes and interest at five percent per annum.

Two issues arise for consideration, namely (1) whether the findings of the trial court are supported by the evidence, and (2) whether the oral agreements involved are within the statute of frauds.

■ Defendant's evidence contradicted that of plaintiffs to produce an issue of fact for determination by the trial court. Conflicts in evidence are not to be resolved on appeal, and the trial court's findings will not be disturbed unless they are manifestly and palpably contrary to the evidence. We find here ample evidence to sustain the findings. Seitz v. Sitze, 215 Minn. 452, 455, 10 N. W. (2d) 426, 428; Johlfs v. Cattoor, 193 Minn. 553, 556, 259 N. W. 57, 58; Bicanic v. J. C. Campbell Co. 220 Minn. 107, 113, 19 N. W. (2d) 7, 10; 1 Dunnell, Dig. & Supp. § 411.

■ The oral agreement to lease the premises to plaintiffs for a term of one year embodied a provision giving to plaintiffs an option to purchase the premises upon the expiration of the lease term. This option, prior to its execution or acceptance, did not of itself contribute anything to bring the agreement under the statute of frauds. In the first place, a contract conferring an option to purchase is nothing more than an irrevocable and continuing offer to sell, and conveys no interest in land to the optionee, but vests in him only a right *in personam* to buy at his election. At best it is but an irrevocable right or privilege of purchase and does not come within Minn. St. 1941, § 513.04 (Mason St. 1927, § 8459).[3]

■ In the second place, an option agreement is a unilateral contract[4] and as such it is, however long the time for the exercise of the option may run, not within the statute of frauds. By its very nature it is, from its inception, fully performed by the optionee as far as the acquirement of an irrevocable right of purchase is concerned. Obviously, it does not therefore fall within the provision

[3]See, Ferch v. Hiller, 209 Minn. 124, 128, 295 N. W. 504, 506, and cases cited; Berkner v. Segal, 168 Minn. 62, 64, 209 N. W. 536, 537; Martin v. Walker, 84 Minn. 8, 9, 86 N. W. 467, 468; Western Union Tel. Co. v. Brown, 253 U. S. 101, 110, 40 S. Ct. 460, 462, 64 L. ed. 803, 807; Richanbach v. Ruby, 127 Or. 612, 271 P. 600, 61 A. L. R. 1441; Hughes v. Antill, 23 Pa. Super. 290; 49 Am. Jur., Statute of Frauds, § 49; 27 R. C. L., Vendor and Purchaser, § 31; 6 Dunnell, Dig. & Supp. § 10016; Willard v. Tayloe, 8 Wall. (U. S.) 557, 19 L. ed. 501.

[4]Restatement, Contracts, § 12; 30 Wd. & Phr. (Perm. ed.) pp. 24 and 25; Ferch v. Hiller, 209 Minn. 124, 128, 295 N. W. 504, 506.

of § 513.01 (§ 8456) that no action shall be maintained on any agreement "that by its terms is not to be performed within one year from the making thereof."[5]  The result is the same even though the option of purchase is a part of an oral lease.  Place v. Johnson, 20 Minn. 198 (219) ; Willard v. Tayloe, 8 Wall. (U. S.) 557, 19 L. ed. 501; Richanbach v. Ruby, 127 Or. 612, 271 P. 600, 61 A. L. R. 1441; Rease v. Kittle, 56 W. Va. 269, 49 S. E. 150.

■ The oral lease, however, aside from the option contained therein, as a bilateral contract, was not capable of performance within one year from the date of its making on April 5, 1943, and was therefore subject to §§ 513.01, 513.04 (§§ 8456, 8459), unless taken out of the statute by part performance.  § 513.06 (§ 8461). An oral lease of real estate for a term of one year, to commence *in futuro,* is within the statute of frauds.[6]  Here, however, the entire oral lease agreement had been fully performed when plaintiffs exercised the option, and the statute was no longer applicable.  Bjornstad v. Northern States Power Co. 195 Minn. 439, 442, 263 N. W. 289, 290; Theopold v. Curtsinger, 170 Minn. 105, 108, 212 N. W. 18, 19; Nelson v. McElroy, 140 Minn. 429, 431, 168 N. W. 179, 180, 587; 6 Dunnell, Dig. & Supp. § 8852.

■ The instant, however, plaintiffs exercised their option by notifying defendant of their election to buy the premises a new contract, an oral contract for the purchase and sale of land, came into being.  It was clearly within the statute of frauds (§ 513.04

---

[5]Restatement, Contracts, § 198, *comment a,* and Minnesota Annotations thereto; Seitz v. Sitze, 215 Minn. 452, 456, 10 N. W. (2d) 426, 429; Nelson v. McElroy, 140 Minn. 429, 431, 168 N. W. 179, 180, 587; Theopold v. Curtsinger, 170 Minn. 105, 212 N. W. 18; Rease v. Kittle, 56 W. Va. 269, 49 S. E. 150; Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000; 30 Wd. & Phr. (Perm. ed.) pp. 16 and 17; 6 Dunnell, Dig. & Supp. § 8852.

[6]Jellett v. Rhode, 43 Minn. 166, 45 N. W. 13, 7 L. R. A. 671; Johnson v. Albertson, 51 Minn. 333, 53 N. W. 642; Brosius v. Evans, 90 Minn. 521, 97 N. W. 373; see, Biddle v. Whitmore, 134 Minn. 68, 158 N. W. 808; Atwood v. Frye, 199 Minn. 596, 273 N. W. 85; In re Cohen (D. C.) 15 F. Supp. 690; 14 Minn. L. Rev. 749; Annotation, 111 A. L. R. 1465, 1471.  As to effect of a preliminary oral agreement to execute a written lease for one year, see 14 Minn. L. Rev. 746 to 756, and cases therein cited.

[§ 8459]), unless taken therefrom by part performance, § 513.06 (§ 8461). According to Restatement, Contracts, § 197, the applicable rule is as follows:

"Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

\* \* \* \* \*

"(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price,

the purchaser or the vendor may specifically enforce the contract."

In other words, the acts of taking possession and of making part payment, when they are performed under or in reliance upon the oral contract as to be unequivocally referable to the vendor-vendee relationship and not referable to any other relation between the parties, are sufficient to remove the contract from the statute of frauds. The doctrine of part performance, exemplified by the above rule, was followed by this court in Wentworth v. Wentworth, 2 Minn. 238 (277), 72 Am. D. 97; Gill v. Newell, 13 Minn. 430 (462); and Bresnahan v. Bresnahan, 71 Minn. 1, 73 N. W. 515. In Brown v. Hoag, 35 Minn. 373, 375, 29 N. W. 135, 137, however, the court expressly rejected the unequivocal reference theory upon which the earlier cases were based and adopted the fraud theory under which the plaintiff must show that his acts of part performance in reliance upon the contract so altered his position that he would incur an unjust and irreparable injury in the event the defendant were permitted to rely on the statute of frauds. This latter decision, though apparently overlooked in Bresnahan v. Bresnahan, *supra*, has been followed in subsequent cases.[7] We now adopt the Restatement principle to the effect that the taking of possession,

[7]See, Slingerland v. Slingerland, 39 Minn. 197, 39 N. W. 146; Jorgenson v. Jorgenson, 81 Minn. 428, 84 N. W. 221; Veum v. Sheeran, 95 Minn. 315, 104 N. W. 135; Trebesch v. Trebesch, 130 Minn. 368, 153 N. W. 754; Chapel v. Chapel, 132 Minn. 86, 155 N. W. 1054; Happel v. Happel, 184 Minn. 377, 238 N. W. 783. See, 21 Minn. L. Rev. 224; Minnesota Annotations to Restatement, Contracts, § 197, and cases therein cited.

coupled with the making of part payment,[8] in reliance upon and with unequivocal reference to the vendor-vendee relationship,[9] *without proof of irreparable injury through fraud,* is sufficient to avoid the statute. Brown v. Hoag, *supra,* and subsequent decisions based thereon, insofar as they require proof of irreparable injury or great hardship in addition to part performance, are expressly overruled. In other jurisdictions, as well as our own, in losing sight of historical antecedents, considerable confusion has resulted in determining the basis for the removal of cases from purview of the statute of frauds. See, 13 Minn. L. Rev. 744; Annotation, 101 A. L. R. 923, 943.

"The origin of the doctrine of the part performance as applied to permit the specific performance of an oral contract for the sale of real estate may be traced to a rule of equity which, antedating the English statute of frauds, required as a prerequisite of the enforcement of parol contracts concerning land that the plaintiff show that the contract had been partly performed, *or* that he had so altered his position in reliance on the agreement that a refusal to enforce it would amount to a fraud upon him." (Italics supplied.) 49 Am. Jur., Statute of Frauds, § 420.

Dean Pound, *The Progress of the Law,* in 33 Harv. L. Rev. 929, 937, with clarity explains the basis for the confusion that has arisen in so many American jurisdictions:

[8]See, Seitz v. Sitze, 215 Minn. 452, 10 N. W. (2d) 426; Johlfs v. Cattoor, 193 Minn. 553, 259 N. W. 57; Ritchie v. Jennings, 181 Minn. 458, 233 N. W. 20; Atkins v. Little, 17 Minn. 320 (342); Phillips v. Jones, 79 Ark. 100, 95 S. W. 164, 9 Ann. Cas. 131; Sprague v. Jessup, 48 Or. 211, 218, 83 P. 145, 148, 84 P. 802, 4 L.R.A.(N.S.) 410, 415; Bomier v. Caldwell, 8 Mich. 463, 475; Jutten v. Deeble, 88 Colo. 301, 295 P. 496; 6 Dunnell, Dig. & Supp. § 8885; 49 Am. Jur., Statute of Frauds, §§ 433, 435; 21 Minn. L. Rev. 224.

[9]See, Seitz v. Sitze, *supra;* Hatlestad v. Mutual Trust L. Ins. Co. 197 Minn. 640, 268 N. W. 665; Biddle v. Whitmore, 134 Minn. 68, 158 N. W. 808; Pierce v. Hanson, 147 Minn. 219, 179 N. W. 893; Koch v. Fischer, 122 Minn. 123, 142 N. W. 18; Place v. Johnson, 20 Minn. 198 (219); Gill v. Newell, 13 Minn. 430 (462); Phillips v. Jones, *supra;* West v. McKay, 225 Ala. 397, 143 So. 573; 49 Am. Jur., Statute of Frauds, §§ 428, 430, 440; 21 Minn. L. Rev. 224.

"*  *  * It is important to insist that the taking of cases out of the statute is a historical anomaly, only to be understood by reference to seventeenth-century and eighteenth-century legal institutions and modes of thought in equity and that, like all historical anomalies of the sort, it defies logically satisfactory analytical treatment.

"What is the actual situation? We say that for the purposes of courts of equity, cases are taken out of the purview of the statute in either of two ways: by fraud *or* by part performance. Recently there has been a tendency to run the two together, largely under the influence of Pomeroy's doctrine of 'equitable fraud.' But they had an independent origin and have developed along independent lines. Hence they call first for independent consideration." (Italics supplied.) [10]

And *Id.* at pp. 939-940:

"Before a decade had passed after its [statute of frauds] enactment, the Court of Chancery began to take cases out of the operation of the statute where purchaser had been put in possession under the contract. Sugden [Vendor and Purchaser (14 ed.) 152, note p] long ago called attention to some old cases which indicate that this was the result of ideas as to livery of seisin. *Putting the purchaser in possession was taken to be the substance of a common-law conveyance.* The rule thus derived became established in England and in a majority of American jurisdictions. But its original basis was soon overlooked and attempts to rationalize the subject led writers and courts to turn to the idea of 'fraud' in order to make a reasoned doctrine of 'part performance' on the basis of the old cases where the chancellor had dispensed with the statute. Different developments of this idea gave rise to many varieties of doctrine. Thus we get to-day cases taken out by possession alone; cases taken out by possession coupled with something else, arbitrar-

---

[10] "The leading cases for the two types of taking out of the statute are Mullet v. Halfpenny, Prec. Ch. 404 (1699) and Butcher v. Stapely, 1 Vern. 363 (1685)." *Id.* note, p. 936.

ily prescribed by judicial decision or by statute; cases taken out by possession when joined to circumstances of great hardship upon purchaser; cases of part performance other than by taking possession, where there are acts solely referable to a contract as to the very land or showing a change in the character of the pre-existing possession,and cases where it is not possible to take possession but relief is given on a theory of fraud or of irreparable injury to purchaser, without more." (Italics supplied.)

Equitable relief has usually been denied where the court in its discretion has found the common-law remedy to be adequate. Where, however, an interest in land is involved, we have an exception to this rule that is significant in illustrating the special status accorded to land as distinguished from other forms of property. Clark, in his Principles of Equity, § 42, says:

"* * * damages for the breach of a contract for the sale and purchase of any interest in land is always considered inadequate, without regard to the size, value or location of the land or the possibility of getting other land substantially equivalent. The crystallization of this rule is probably due historically to the peculiar respect and consideration which has been accorded to land in the English law; its modern justification is that because there is no open market for land either for seller or buyer, the number of instances where the buyer could get land substantially as satisfactory or where the vendor could make a ready sale to another purchaser is so small as to be negligible."

In short, inadequacy of damages is presumed, and proof thereof is not required. This presumption is sound. In order to effect complete justice, there is, after all, no adequate substitute for specific performance. It is submitted, where relief is sought to prevent the statute of frauds from itself becoming an instrument of fraud, that, in the light of historical development and consistent with the purpose of the statute, there has been no occasion for requiring, in addition to part performance, a proof of irreparable injury. See, 1 Pomeroy, Equity Jurisprudence (5 ed.) § 221b; 4 *Id.* § 1402;

Gartrell v. Stafford, 12 Neb. 545, 11 N. W. 732, 41 Am. R. 767.

Samuel Williston, under whose direction Restatement, Contracts, § 197, was drafted, in Commentaries on Contracts, Restatement No. 4, pp. 14-15, dated February 23, 1928, states:

"* * * Courts of equity early adopted the doctrine that such acts as the taking of possession, making of improvements, and the like by the purchaser with consent of the vendor make the contract enforceable though there is no written memorandum. This doctrine has been rested upon two main reasons: (1) that the rule of the Statute of Frauds is an evidential rule and that any acts clearly and solely referable to the existence of the contract satisfy in equity the purpose of the Statute; (2) that equity should relieve against the operation of the Statute in cases where it would be unconscionable for the vendor to rely upon it in defense."

These two main reasons given by Williston correspond to Dean Pound's analysis that "cases are taken out of the purview of the statute in either of two ways: by fraud *or* by part performance." (Italics supplied.) Obviously, the evidential purpose of the statute is fully satisfied by adequate part performance without proof of irreparable injury. See, 13 Minn. L. Rev. 744; Kingsley, *Some Comments on the Section of the Minnesota Statute of Frauds Relating to Contracts,* 14 Minn. L. Rev. 746, 753-754.

■ Whether the acts of part performance are unequivocally referable to the vendor-vendee relationship under the oral contract is in this case a question of fact for the trier of fact. See, Seitz v. Sitze, 215 Minn. 452, 10 N. W. (2d) 426; Ritchie v. Jennings, 181 Minn. 458, 233 N. W. 20; Place v. Johnson, 20 Minn. 198 (219).

In the instant case, the two essential elements of possession and part payment are present. Defendant contends, however, that possession is not unequivocally referable to the vendor-vendee relationship, but is equally referable to the relation of landlord and tenant. The entire record, however, is pregnant with indications of a dominant intent of the parties from the inception of their transaction that a purchase-and-sale relation should be established

upon the expiration of the lease term. The purchase of the stove also indicated an understanding that plaintiffs were to occupy the premises permanently. After plaintiffs exercised their option and an oral contract of purchase and sale then came into being, defendant's conduct and statements were consistent only with a mutual understanding that plaintiffs' possession of the premises was no longer that of a tenant but that of a vendee with unequivocal reference to the oral contract. When plaintiffs, on several occasions, requested the preparation of a contract for deed, defendant, instead of rejecting the vendor-vendee relationship, affirmed it by stating "that he did not have time to have a contract drawn; that his word was good; that plaintiff Mark Shaughnessy was not to worry about getting his contract." In fact, defendant finally presented to plaintiffs a written memorandum to be used as a basis for drawing a contract for deed. The conduct of the parties indicated no misunderstanding as to the nature of their transaction and the relation that each bore to the other. There was a dispute as to the amount of the purchase price and the terms of payment, but as to these matters the findings of the court are sustained by the evidence. Similar considerations support the findings that the payments made by plaintiffs were solely referable to the oral contract of purchase and sale.

The order denying a new trial is affirmed.

Affirmed.