LILLIE GOEBEL and others *vs.* SHERWOOD HOUGH and another.

October 24, 1879.

**Landlord and Tenant—Counterclaim.**—A cause of action in a tenant against his landlord, for wrongfully interfering with his enjoyment of premises rented, is a counterclaim in an action against him by the landlord to recover rent for a period including that of such interference.

**Same—Unauthorized Entry for Repairs.**—A stipulation in a contract of leasing, that the landlord may enter and make repairs during certain months, does not authorize an entry to make them any other time. If a landlord does not, by agreement with the tenant, reserve a right to enter and make repairs, the fact that the repairs are necessary from the unsafe condition of the building does not justify the landlord in entering for that purpose.

**Same—Damages—Interruption of Business—Profits.**—Rule of damages in such a case considered. When the wrong consists in interrupting a regular and established business, the "usual and ordinary profits incident to the business" are a proper element of damages. Such profits are not contingent or speculative, in the sense that excludes profits from consideration as an element of damages.

Same—Value of Mercantile Business, how Proved.—Where it is a mercantile business, it is proper, in order to show its value, to prove the monthly sales for a considerable period before and after the interruption, and the usual percentage of net profits on sales in that trade.

Same—Evidence as to whether Business was Gaining or Losing.—Where a business had been carried on about two years before the interruption, *held,* that in order to show whether the business, as conducted by the party, was a gaining or losing business, it was proper to prove the total capital put into the business prior to the interruption, the amount drawn out, the debts and credits of the business then outstanding, the value of the stock then on hand, and the expenses of the business.

Verdict set aside.—Sufficiency of evidence to sustain a verdict considered, and evidence held insufficient.

Action to recover the rent of a building on Third street in St. Paul. The complaint alleged occupancy by defendants under a lease for one year from May 1, 1877, at a rent, reserved therein, of $83.33 per month until plaintiffs should make certain contemplated improvements, and $100 per month thereafter; that the plaintiffs made such improvements and completed them on October 10, 1877, but that the defendants have paid no part of the rent for the months succeeding August, 1877.

In their answer the defendants admit that they took possession of the premises on May 1, 1877, under a lease from plaintiffs for the term of one year from that date, and carried on a general business as booksellers and stationers therein during the term. They further admit that by the terms of the lease they were to pay rent at the rate of $83.33 per month during the term or until the plaintiffs should, in the months of June and July, 1877, make certain repairs, and that if such repairs should be made in those months, the defendants should thereafter pay rent at the rate of $100 per month; and that in the lease it was further agreed that plaintiffs might take down and rebuild the front part of the second story of the building during June and July, 1877, but that no other part of the building should be taken down, rebuilt or repaired during the term, and that no right was reserved by or conceded to plaintiffs to make the said or any

repairs or alterations except.in the months of June and July, which were the dullest and least profitable months to the defendants in their business.    That the plaintiffs did not exercise the right to enter and make repairs during these months, nor until September 18, 1877, when without defendants' consent they entered the premises and expelled the defendants from the front part thereof, whereby they were evicted and deprived of the possession and use of the premises for one month and two days.

For a counterclaim, the defendants, after alleging an agreement on plaintiffs' part not to disturb them in the possession and use of the premises except while making the above-mentioned repairs, and not to make those repairs except during the months of June and July, allege that the defendants entered and took possession of the premises, and tore down and rebuilt the whole front wall and other parts of the building, and expelled the defendants from the front one-half thereof, and obstructed, blockaded and made impassable the sidewalk and front door of the building from September 18th to October 20th.    They further allege the amount of stock kept by them in those months, and of their uniform sales during those months and the uniform profits on such sales; and that by reason of the disturbance of their occupation and use of the premises, they were hindered from making their uniform sales and profits, and were deprived of such sales to the amount of $2,250, and of such profits to the amount of $750.    Various other items of damage are also set forth, including depreciation of stock, cost of moving stock to the rear portion of the building, damage to the stock by such removal, etc., etc., the whole damage amounting to more than the rent admitted to be unpaid.    The counterclaim was duly put in issue by a reply.

At the trial in the district court for Ramsey county, before *Wilkin*, J., the plaintiffs objected to the introduction of any evidence by defendants, on the ground that no defence and no valid counterclaim was pleaded therein.    The objection

was overruled, the plaintiffs excepting, and the defendants introduced evidence, as stated in the opinion, to show the value of their business and the damage to it, as well as their other damages alleged in the counterclaim, and also evidence to sustain the allegations of the answer respecting the terms of the lease. The jury found for the defendants, assessing their damages at $5; a new trial was refused, and plaintiffs appealed.

*John B. & W. H. Sanborn,* for appellants.

*Allis & Allis,* for respondents.

GILFILLAN, C. J. In Gen. St. c. 66, § 80, subd. 1, describing one class of causes of action that may be the subject of counterclaim, the clause, "or connected with the subject of the action," is very indefinite. But we think the statute allowing counterclaims, being a remedial statute, should be construed liberally, and thus construing the clause in question, a cause of action in a tenant against his landlord, for wrongfully interfering with his enjoyment of premises rented, is connected with the subject of the action, when he is sued by the landlord for rent for a period including that of such interference, sufficiently to make it a counterclaim.

If, as the jury might have found from the evidence, the plaintiffs stipulated, in the contract of leasing, for the right to enter and make repairs only during the months of June and July, the stipulation would not justify them in entering at any other time, and an entry at any other time would stand as though no right to enter were reserved. Without any agreement on the subject, the fact that the repairs were necessary, from the unsafe condition of the wall, would not justify plaintiffs in entering to make them, though it might relieve them from liability to punitive damages.

The most important question concerns the rule of damages upon the counterclaim, if it is established. Defendants' right to recover the actual damage to stock, for loss of rent of the room above, and for what they necessarily expended

in restoring the room, sign and awning to their former condition, cannot be questioned.

The right to deduct the entire rent of the building during the period of interruption cannot be allowed; for, although the act of the plaintiffs may have been such as to give defendants a right to treat it as an eviction, they did not choose so to treat it, but remained in possession, and had some use, more or less beneficial to them, of the building. They get some benefit from their tenancy when they are allowed for loss of rent of the room above. If no damages are claimed for injury to the business, but only for interference with the use of the store, and for loss of time of defendants and their employes, defendants must show to what extent they lost the use of the store, and the time of themselves and employes, and to that extent only can they in such case recover for these items. On the other hand, if damages are claimed on the basis of injury to the value of the business, then loss of use of the store, and of the time of defendants and their employes, are improper as distinct items of damage, for they are included in the estimation of injury to the value of the business.

When a regular and established business, the value of which may be ascertained, has been wrongfully interrupted, the true general rule for compensating the party injured is to ascertain how much less valuable the business was by reason of the interruption, and allow that as damages. This gives him only what the wrongful act deprived him of. The value of such a business depends mainly on the ordinary profits derived from it. Such value cannot be ascertained without showing what the usual profits are; nor are the ordinary profits incident to such a business contingent or speculative, in the sense that excludes profits from consideration as an element of damages. What they would have been, in the ordinary course of the business, for a period during which it was interrupted, may be shown with reasonable certainty. What effect extra

ordinary circumstances would have had upon the business might be contingent and conjectural, and any profits anticipated from such causes would be obnoxious to the objection that they are merely speculative; but a history of the business, for a reasonable time prior to a period of interruption, would enable the jury to determine how much would be done under ordinary circumstances, and in the usual course, during the given period; and the usual rate of profit being shown, of course the aggregate becomes only a matter of calculation. The case is analogous to those of injury to the person, where the person injured is rendered incapable of earning what he would otherwise have earned. In such cases compensation for earnings lost is a proper element of damages, although it is impossible to show with absolute certainty that the person would have had employment during the period of incapacity, or earned so much as he did before.

In *Simmer* v. *City of St Paul*, 23 Minn. 408, cited by plaintiffs as deciding this point, the wrong consisted in interrupting the plaintiff's business. The demurrer to the complaint was sustained here, on the ground that the complaint did not show that the business was or would have been of any value. It was alleged that the plaintiff was deprived of the gains and profits he would otherwise have made and received; but the character of such expected gains and profits, whether such as might be taken into account in arriving at the value of the business, or only such as were merely anticipated and conjectural, did not appear, and so this court held that while under proper pleading it would be competent for the plaintiff to show what the business was worth, the allegations in the complaint were not sufficient to that end. The opinion contains some language from which it is assumed the court held that in no case can gains or profits be taken into account in determining the damage done by destruction of a business. But that language must be understood with reference to the indefinite and undescribed gains and profits mentioned in that complaint.

17

In this case, to show what profits were lost to the business during the period of interruption, the defendants showed their monthly sales from the commencement of their business, about twenty-one months before the interruption, down to several months after it, and, also, the usual percentage of net profits on sales in that trade.    This was proper evidence; but that was not the only mode by which the desired facts could be ascertained.    It was proper for either party to prove the total capital put into the business prior to the commencement of the interruption, the amount drawn out, the debts of the business then outstanding, the value of the stock and amount of credits then on hand, and the expenses of the business. From these items the jury could determine whether the business, as conducted by defendants, was a gaining or losing business, and the extent of the loss or gain.

When we come to consider the objection that the evidence does not justify the verdict, we find the case to be this:    The interruption commenced September 18th, and continued to October 20th, a period of thirty-three days, or thirteen days of the thirty in September, and twenty of the thirty-one in October.    The business was not entirely suspended; some business appears to have been done through the whole time. The evidence shows the amount of sales for each of the months, September and October, but does not show the sales during the thirty-three days.    Without such evidence there are no reliable *data* from which the jury could determine how much less the sales were for that period than they would have been, had there been no interruption.    For this reason there must be a new trial.

Order reversed, and new trial ordered.