RAYNOR, Respondent, vs. VALENTIN BLATZ BREWING COMPANY, Appellant.

*August 31 — September 20, 1898.*

*Landlord and tenant: Eviction: Damages: Evidence: Loss of anticipated profits: Illegal business: Pleading: Appeal: Exceptions.*

1. Evidence of previous annual profits, made while carrying on a theater and saloon business in a leased building, is admissible to show the profits which the lessee might reasonably anticipate from a continuation of such business during the balance of the term, as a

AUGUST TERM, 1898.

Raynor vs. Valentin Blatz Brewing Co.

basis for estimating the damages recoverable for a wrongful eviction; but profits made on Sundays, resulting from a criminal violation of the Sunday laws, can form no legal basis for the estimate of such damages.

2. Where, in such a case, the defendant attempted by cross-examination of the plaintiff, and by a question proposed for the special verdict, to ascertain what part of the anticipated profits were based upon the Sunday business, but the trial court held the inquiry immaterial, exceptions to such rulings properly raised, for review on appeal, the question as to such profits.

3. It was not necessary, in such a case, for the defendant to plead the violation of the Sunday laws, the question as to the proper elements of damage being one of evidence.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This was an action by the lessee of real estate against his lessor for damages for alleged breach of the covenants of a lease. It appears that about April 1, 1895, the defendant leased to the plaintiff for one year a building in the city of Milwaukee, known as the "People's Theater," to be used as a theater and saloon, at a rental of $200 per month. The plaintiff had been in possession of the theater for several years previously, and this last lease was an oral lease for a year only. The rent for the month of April was paid, and then the plaintiff continued in possession, and operated his theater and saloon in connection, until April 28, 1895, when the season was said to be over, and the theater was closed. The plaintiff claims that, as part of the lease, the defendant agreed to make all necessary repairs in the building during the year; but the defendant denies this, and claims that it only agreed to make certain specified repairs, which were then pointed out by the plaintiff, and which were made. In June, 1895, a new building was about to be erected immediately joining the theater, and the city inspector of buildings thereupon inspected the building in question and condemned it as dangerous, and ordered it to be torn down. On the 26th of June, the plaintiff, by letter, demanded that the building be

Raynor vs. Valentin Blatz Brewing Co.

put in repair.  Two days later, the defendant replied by letter denying that it had made any agreement to repair.  On the 11th of July, the plaintiff, by letter, demanded that repairs be made forthwith, and sent the keys of the building to the defendant for the purpose of permitting it to make the necessary repairs.  The defendant made no repairs, but on the 13th of August returned the keys, with a short letter saying that it had complied with the terms of the lease.  On the 14th of August, the plaintiff replied to this letter, asking in what particulars the lease had been complied with, and limited the time for a reply to August 20th, on the ground that after that time he would have no use for the premises, as he would be unable to carry out his contracts with theatrical companies.  The defendant made no reply to this letter, and made no repairs, but, in October following, tore down the building.

Upon the trial, the plaintiff was allowed to prove as a basis for the estimation of damages what his profits had been in the use of the building as a theater and saloon during the several years immediately preceding the year in question, and it appeared that he had operated the theater and saloon upon Sunday as well as upon week days, whereupon, upon the cross-examination, the defendant's attorney endeavored to ascertain from the plaintiff what part of the estimated profits were derived from the Sunday business.  After several questions upon this subject, the court made the following ruling, to which the defendant took exception; "I hold the profits which he makes on Sundays are to be included the same as other days, and that the profits which this man made on Sunday in his business are not to be distinguished from the profits he made generally.  I will give you the benefit of the exception, and stop the investigation right here as far as the Sunday business is concerned, without holding whether his business is legal or illegal on Sundays or other days.  There is a difference between a contract *made* on Sun-

day and *executed* on Sunday. A court held a contract made on Sunday was illegal, but they never held a contract executed on Sunday illegal. The result of that would be in an accounting between partners, or in such business, it would be necessary to eliminate from the business the business done on Sunday, if any of it was done on Sunday. If he is entitled to recover profits, it is immaterial whether they were made on Sunday or any other day, in my judgment." Thereupon no further questions were asked upon this subject.

A special verdict was demanded, and the defendant, among other questions, requested that the court submit the following questions as a part of the special verdict: "(7) Did the plaintiff, during the years 1891 and 1895, run his theater and the premises in question on Sundays? (8) If you answer the foregoing interrogatory in the affirmative, was not a large portion of his profits derived from keeping open his theater and premises in question on Sundays? (9) Was a considerable portion of the profits of the plaintiff derived from the sale of liquors in his said theater on Sundays? (10) Is a considerable portion of the anticipated profits claimed by the plaintiff founded on the expected keeping open of said theater on Sundays, and the sale of liquors therein on such days? (17) How much of the anticipated profits claimed by plaintiff as damages were to be derived from the keeping open of the theater on Sundays, and the sale of liquors therein on said days?" The court refused to submit any of these questions, and exceptions were duly taken to such rulings.

The following special verdict was rendered: "(1) Did the defendant corporation lease the premises in question to the plaintiff for the term of one year from the first of April, 1895, upon the terms stated in the complaint, except as to repairs? Answered by direction of the court: It did. (2) Did the plaintiff remain in possession of said premises during substantially the whole month of April, 1895? Answered by direction of the court: He did. (3) Did the plaintiff pay

to the defendant corporation the sum of two hundred dollars on account of the rent reserved in said lease? Answered by direction of the court: He did. (4) Did the defendant corporation, prior to the making of said lease, or at the time of the making thereof, undertake to make some repairs upon said building? Answered by direction of the court: It did. (5) Were such repairs pointed out by the plaintiff, and agreed to by the defendant corporation; or were the repairs which the defendant corporation undertook to make all necessary repairs for the use of the premises in question, for the purpose of a theater and barroom? Necessary repairs. (7) If, in answer to the fifth interrogatory, you say that the repairs undertaken to be made by the defendant corporation were such general repairs as were necessary for the use of the premises, for the purposes of a theater and barroom, did the defendant corporation subsequently refuse to make such repairs? It did. (8) Was the building in question owned by the defendant corporation, standing upon land owned by the Pabst Brewing Company, and leased by the defendant corporation? Answer by direction of the court: It was. (9) Did the building inspector of the city of Milwaukee, on or about the 6th day of June, 1895, notify the defendant corporation that said building was dangerous, and that the same was condemned? Answer by direction of the court: He did. (10) How long did said building remain standing and without further repair after said notice was given? Answer by direction of the court: About four months. (11) At the time of the taking of the lease aforesaid, did the defendant corporation know, or could it in the exercise of ordinary care have known, the then condition of said building? They could. (12) Did the plaintiff at the time of said leasing know, or could he in the exercise of ordinary care have known, the then condition of said building? No. (13) Was the said building, at the time of the making of said lease, in an unsafe condition, so that it was dangerous to run a theater and a barroom in said build-

ing? No. (14) Could said building have been repaired so as to make it safe to run a theater and barroom therein during the term of said lease, to wit, one year from the first day of April, 1895? Yes. (15) If you answer the last interrogatory in the affirmative, what would be the expense of making such repairs? Cannot tell. (16) Did the defendant corporation demolish the building, as charged in the complaint? Answer by direction of the court: It did. (17) What profit, if any, could the plaintiff have made by the use of said building for a theater and barroom during the term of eleven months, commencing May 1, 1895? $8,250."

Judgment for the plaintiff thereon was rendered, and the defendant appeals.

For the appellant there were briefs by *Sylvester, Scheiber & Orth,* and oral argument by *Fred. Scheiber.* They contended, *inter alia,* that there are so many elements of uncertainty that enter into the production of profits in plaintiff's business that they are too conjectural to form a legitimate basis for a recovery of damages. *Shadbolt & Boyd I. Co. v. Topliff,* 85 Wis. 513, and cases cited on p. 525; *Pewaukee M. Co. v. Howitt,* 86 id. 270, 277, and cases cited; *Todd v. Keene,* 167 Mass. 157; *Noble v. Hand,* 163 id. 289; *Brown v. Smith,* 12 Cush. 366; *Bernstein v. Meech,* 130 N. Y. 354; *Moss v. Tompkins,* 69 Hun, 288; *S. C.* 144 N. Y. 659.

For the respondent there was a brief by *C. W. Briggs* and *Timlin & Glicksman,* and oral argument by *Mr. Briggs* and *Mr. W. H. Timlin.* To the point that no question of illegality or of Sunday violation could be raised by the appellant because not affirmatively pleaded, they cited *Musser v. Adler,* 86 Mo. 445–449; *Moore v. Ringo,* 82 id. 468; *Suit v. Woodhall,* 116 Mass. 547; *St. Louis A. & M. Asso. v. Delano,* 108 Mo. 217–220, and cases cited; *Denton v. Logan,* 3 Met. (Ky.), 434; *Bradford v. Tinkham,* 6 Gray, 494; *Durham Fertilizer Co. v. Pagett,* 39 S. C. 69.

WINSLOW, J.    The verdict in this case justifies the judgment for the plaintiff, and we have discovered no substantial error in the case save upon the question of the measure of damages. This was undoubtedly a case within the rules laid down in *Poposkey v. Munkwitz*, 68 Wis. 322, where the law authorizes the recovery of anticipated profits of a business as damages. The loss of such profits in the present case must clearly have been within the contemplation of the parties, and they are not too remote or conjectural, and are capable of being ascertained with reasonable certainty, because the plaintiff had been transacting the same business for years in the building. The evidence, therefore, showing the plaintiff's previous annual profits in this very building while transacting the same business, was properly received as a basis for ascertaining the profits which he might reasonably anticipate during the balance of the year after his practical eviction. But the profits of an unlawful business cannot be any proper basis for the estimate of damages. This would seem to be too clear for argument. The profits made on week days may properly form such basis; but the profits made on Sundays, resulting from a criminal violation of the Sunday law, cannot form any legal basis for the estimate of damages. As well might it be claimed that the profits resulting from operating a gambling hall or a house of ill fame could be used as a basis for damages. To state the proposition is to answer it. The defendant attempted, by cross-examination of the plaintiff, and by a question proposed to be submitted in the special verdict, to ascertain what part of the anticipated profits were based upon the Sunday business; but it was held by the court that the inquiry was immaterial, and we regard the question as properly raised by the exceptions taken to these rulings. Nor was it necessary to raise the question by pleading. The defendant was not required to anticipate that the court would allow evidence

of improper elements of damage to be received and go to the jury. It is a question of evidence, and not of pleading. It seems quite certain that the jury took into account the Sunday profits of past years in their estimate of the profits to be anticipated. Certainly, the rulings of the court practically required them to do so. Hence there must be a new trial.

*By the Court.*— Judgment reversed, and action remanded for a new trial.