DAVELAAR and others, Appellants, vs. CITY OF MILWAUKEE,. Respondent.

*October 18, 1904—January 10, 1905.*

*Appeal and error: Review: Sufficiency of exceptions: Municipal corporations: Negligence: Bridges and culverts: Damages: Unlawful association to control business.*

1. Where the record discloses that appellants requested the court to find specifically on an issue, and that exceptions were taken to refusals so to find, as well as to the findings actually made, this is sufficient to entitle appellants to a review of that issue by the supreme court.

2. Plaintiffs' brick yard was flooded, and injury done to the yard and personal property thereon. The flood was caused by the negligence of defendant in so constructing a culvert that it was inadequate for the usual flow of water from ordinary rain falls and from melting snows. *Held*, that money expended for carting off refuse, and cleaning up, leveling and restoring the yard was a proper element of damage, although the evidence failed to specify the items of expense, and the court elsewhere found that plaintiffs had negligently contributed to the loss of some slabs and wood.

3. In such case, it further appeared that plaintiffs had a quantity of dry clay for making pressed brick, which became saturated with water and reduced to mud, thereby destroying it for such use. *Held*, that plaintiffs were entitled to recover the expense of drying and housing such dry clay.

4. In such case, it appeared that plaintiffs submitted their business enterprise to the control and management of an association, by which the output of their yard was regulated. *Held,*. that the court was justified in refusing to allow damages for the interruption of their business.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Modified and affirmed.*

Plaintiffs bring this action to recover damages alleged to have been caused by the city in failing to provide street culverts of adequate size and capacity for the flow of water across defendant's street, situated in close proximity to plaintiffs' brickyard property, and allege that such insufficient

and inadequate culverts caused the waters naturally flowing through them at times of rainfall and melting snow and ice to back up and inundate plaintiffs' brickyard, and to damage it and the personal property thereon, and to interrupt them in the conduct of their business. The defendant city denied that it caused plaintiffs the alleged damages, and claimed that any damage was due to the acts of private parties in damming up the natural course of the water, thereby flooding plaintiffs' brickyard and the property thereon. A jury was waived, and the action was tried by the court. The court found that Deer creek had a constant flow of water, with bed and banks extending along the easterly line of plaintiffs' premises, and across the northwest corner thereof, and thence across other lands, Pryor and Russell avenues, and Bay street, into Lake Michigan; that the streets were graded; that the defendant constructed culverts under and through said street grades at the points of intersection with the stream for the purpose of conducting the water of the stream under and through the embankment and street grades. In addition, the court found as follows:

"These culverts, however, as constructed by said city of *Milwaukee,* were far too small, and were inadequate and insufficient to permit a ready and reasonable escape of the water that naturally, usually, and frequently flowed in said stream during its ordinary stages of high water, and in times of ordinary rains and in ordinary times of melting snows."

"That the defendant, city of *Milwaukee,* was negligent in constructing the said culverts of very inadequate size, and, in the exercise of ordinary care, ought to have known that said culverts would be and were very inadequate, and ought to have foreseen all the damages hereinafter mentioned as a natural, probable, and proximate result of such negligence."

The court found specific amounts for certain items of damage to plaintiffs' property on account of the floods, and awarded judgment for the recovery of these amounts, but refused to allow plaintiffs' claim for the loss of 3,911 yards of

·dry clay, which, according to the evidence, cost plaintiffs twenty cents per yard to put in condition for brickmaking. It also rejected an item of $600, costs incurred in restoring the brickyard property to a proper condition for conducting the business, and allowed no damges for the interruption to the business. Plaintiffs requested the court to find these damages, and, upon refusal, exceptions were taken. Judgment for the amount allowed by the court, namely $2,587, with interest and costs, was awarded against the city. Plaintiffs appeal from this judgment.

*Lyman G. Wheeler,* for the appellants.

For the respondent there was a brief by *Carl Runge,* city attorney, and *V. W. Seely,* of counsel, and oral argument by *Mr. Seely.*

The following opinion was filed November 15, 1904:

SIEBECKER, J. It is insisted on the part of the defendant that no available exceptions were taken by plaintiffs for review of the alleged errors of the trial court. The record, however, discloses that plaintiffs requested the court to find specifically the damages to which our attention is directed, and which were not allowed, and that exceptions were taken to such refusals, as well as to the finding of the court, in effect, disallowing these items of damages. This is sufficient to entitle them to a review of the action of the court upon these questions.

The court found, upon the evidence, that the city was negligent in constructing culverts in its streets over Deer creek, in that they were wholly inadequate for the usual flow of water in ordinary rainfalls and the flow of water caused by melting snows, and that these inadequate culverts were the ·cause of the flooding of plaintiffs' brickyard, and the injury to it and the personal property thereon. A number of items of damages were allowed by the court for injury to horses, to machinery, and for the destruction of brick on the prem-

ises, but nothing was allowed for money expended for carting off the clay, and cleaning up and leveling off, and for other labor in restoring the yard. It is not disputed but that this expense was incurred for this purpose, and we find nothing in the record, and our attention is not directed to any evidence on the subject, in conflict with this claim. It is claimed on behalf of the defendant that the court was warranted in its refusal to allow any of these items, because the evidence was not satisfactory upon the subject, and failed in specifying the items of such expense. True, no itemized account of such expense could be furnished by plaintiff, yet the evidence is direct and positive that this sum was expended for this purpose, and we can perceive no reasonable ground for disallowing it as a necessary expense resulting from defendant's negligence.

It is furthermore claimed that the fifteenth finding of the court shows that the plaintiffs were guilty of negligence contributing to the losses for which these damages are claimed. Upon examination of this finding, we discover that the court found that plaintiffs negligently contributed to the loss of some slabs and wood piled near the creek, in that plaintiffs should have anticipated, from knowledge of prior floods, that, if this material was so piled, it would probably be carried away and damaged. This in no way militates against the conclusion that the item of expense in restoring the yard should have been allowed to plaintiffs, and we must so hold.

Damages were claimed by plaintiffs for the destruction of 3,911 yards of dry clay for making pressed brick, which they had prepared and housed in a shed. The injury consisted in saturating it with water and reducing it to clay mud, and thereby destroying it for such use. It appears that the cost of the process of drying and housing was twenty cents per yard—a total of $782.20. The evidence also clearly establishes that this expense was a total loss. That it was incurred is undisputed. That it must, of necessity, have been caused

by the wrongful flooding of plaintiffs' brickyard, resulting from defendant's negligence in inundating it, as found by the court, is an inevitable conclusion. Under these circumstances, plaintiffs are entitled to recover this amount.

The remaining question pressed for consideration pertains to the allowance of damages for the interruption of plaintiffs' business as brickmakers. The damages claimed for this item are not for future injury to business, and this claim is therefore free from many of the uncertainties usually incident to an attempt to show prospective losses of profits to a business. The evidence shows with reasonable certainty what plaintiffs' usual business output was during periods like those during which it was wholly interrupted by these floods; the cost of manufacture and sale of the brick which could have been made, had the business been carried on during the interrupted period; that there was a market and demand for such brick as were being manufactured by them; that they sold brick during the season, and that there were calls for brick by persons desiring to purchase, in excess of what they could have supplied, had their yard been run to its full capacity during these periods of interruption; and that such sale at established prices would have yielded a certain profit. Had these facts been supplemented by proof showing to a reasonable certainty that plaintiffs would have prosecuted their brickmaking during the period of interruption, it would furnish a sufficient and reliable basis for assessing damages for the loss to their business, but this certainty does not exist. One of the plaintiffs testified that his firm, with the other brick manufacturers of the city of Milwaukee, had formed a business association, of which they were members from 1890 until the time this action was tried. This association controlled the output of brick from their yard in 1890, and limited the output to much less than their capacity, and they were paid for so limiting their manufacture of brick out of the funds of the association. If plaintiffs maintained owner-

ship in an unlawful association—which is a question not before us, and unnecessary to decide—no damages for loss of business could be allowed them. *Raynor v. Blatz B. Co.* 100 Wis. 414, 76 N. W. 343. It also appeared that the quantity of brick manufactured by plaintiffs for 1890 under this association agreement was but little in excess of what they actually did manufacture during each of the seasons of 1891, 1892, and 1893. It is true that plaintiffs stated that they were not directed to limit their manufacture to less than the full capacity of the plant for the years of the flood, but there is no evidence showing that they would have been required or permitted to run their yard to its full capacity during those seasons. It must be assumed that, since they were members of the association during the years of the flooding of which they complain, their output was subject to such regulation and restriction as it had been in the previous year, when an actual limit to the amount of their manufacture was imposed and submitted to. Under these circumstances, the trial court was amply justified in refusing to allow any damages for loss to business.

We can perceive no grounds upon which these facts in the case can be deemed irrelevant and immaterial, as contended by plaintiffs. It must clearly follow, when it is shown that plaintiffs, as members of this association, had submitted their business enterprise to its control and management, and had followed its directions in the management of their private property under the terms of the combination, that they were liable and subject to its control and direction throughout the period of their membership. When it so happens that this relationship causes them loss, they must suffer the consequences, as one of the perils incident to such an enterprise voluntarily undertaken by them.

The judgment must be modified by allowing the two items of damages, as indicated above, at the sum of $1,382.20, with interest thereon at the rate of six per cent. from the 1st day

of April, 1893, in addition to the amount allowed by the trial court.

*By the Court.*—The judgment is modified by increasing the damages recovered to the sum of $3,969.20, with interest in the sum of $1,965.55, and the costs in the sum of $86.89, making a total of $6,021.64, and, as so modified, the judgment is affirmed; appellants to recover their costs on this appeal.

A motion for a rehearing was denied January 10, 1905.