KREMSREITER and wife, Plaintiffs, vs. BODDENHAGEN and
    wife, Appellants, and BERNHARDT and others, Re-
    spondents.

*May 29—June 25, 1919.*

*Landlord and tenant: Notice as to boundaries of property leased:
    Injuries to premises: Interference with use by tenant: Re-
    moval of fence: Damages: Sunday baseball: Basis for dam-
    ages.*

1. Where a lessor points out to a prospective lessee the boundaries
    of land which he is leasing, the lessee is entitled to rely
    thereon, and the lessor must point them out correctly under
    penalty of responding in damages to the lessee; and the latter,
    as against the lessor, is not charged with notice of the visible
    possession of a part of the land by a third person.
2. Lessees of land for use as a baseball park and an athletic field,
    who were compelled in a suit against them and their lessor by
    an adjoining landowner to remove a fence around part of such
    field, can recover as damages from ,the lessor the difference
    between the rental value of the premises as represented and as
    they actually were. .
3. Such lessees cannot recover damages against their lessor for
    loss of use of the property for baseball and athletic purposes,
    due to the removal of the fence, where the use for baseball
    purposes was given up during the first season and no attempt
    was made to use it for other athletic purposes.
4. Nor can such lessees recover damages against their lessor for
    loss of the use of the premises for baseball purposes, based
    upon profits made on Sunday, in violation of sec. 4595, Stats.

· APPEAL from part of a judgment of the circuit court for
Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

Action in equity brought by the owners of certain lots in
a recorded plat in the county of Milwaukee to compel the
removal of a high fence around a large portion of the plat
which closed up certain streets marked on the plat and thus
cut off plaintiffs' access to their property.

The action was originally brought against the defendants
*Boddenhagen* and wife, the owners of the plat, and defend-
ants *Bernhardt* and others, who were the lessees of the *Bod-
denhagens* for a term of years of that part of the premises

not owned by the plaintiffs and who in fact erected and maintained the fence in question. The defendants *Bernhardt et al.* filed a cross-complaint against the *Boddenhagens*, claiming to recover $5,000 of them in case the fence was adjudged to be removed, on the ground that the value of the premises for use as a baseball park and athletic field would thereby be practically destroyed. The court adjudged that the fence must be removed from the ends of the streets and also adjudged that because, by the removal of the fence, the cross-complainants have lost the use of the premises for baseball and athletic purposes, they are entitled to recover $750 damages and costs from the defendants *Boddenhagen,* and from this latter judgment the *Boddenhagens* appeal.

The facts will be more easily understood by referring to the accompanying plat of *Boddenhagen's* subdivision.

PLAINTIFFS' PROPERTY, LOTS 4-5 AND 6, BLOCK 3
DOTTED LINE IS THE LINE OF FENCE IN QUESTION

The greatest length of the subdivision east and west is about 430 feet, and north and south 375 feet. The plat was recorded June 16, 1908, and in August, 1914, the *Boddenhagens* sold and deeded to the plaintiffs lots 4, 5, and 6 in block 3, who soon thereafter built a house thereon in which they were living in May, 1915. No streets were marked out upon the ground and there was nothing to indicate that it was platted ground. In May, 1915, the defendants and cross-complainants *Bernhardt et al.* negotiated with the *Boddenhagens* for a five-year lease of the field for use as a baseball park and field for other athletic sports and amusements conducted for profit. They had no actual knowledge that the field had been platted. Before making the lease they went on the premises with *Boddenhagen's* authorized agent, who assured them that *Boddenhagen* could and would lease the entire premises to them. There was a board fence along the entire east side of the premises. *Boddenhagen's* agent told them they could build a tight board fence so as to inclose all but the southwest corner of the premises; that such fence could begin at the northeast corner, run west to Hawley road, thence southwest along the east side of Hawley road to a point about halfway across lot 6 in block 1, thence southeasterly across lots 6, 7, and 8, and continuing to the south end of the high board fence on the east. Relying on these representations the cross-complainants made a verbal contract to lease the premises for five years, paying therefor as rental the taxes assessed on the premises not exceeding $100 a year. They immediately took possession and commenced to erect their fence and a small grandstand. The fence was begun at the northeast corner of the premises, and when Watkins avenue was reached *Boddenhagen* directed that the course be changed so as to run nearly east along the north line of Watkins avenue to a point near the middle of lot 3, block 3, and thence northeast to the west line of lot 4. The fence is indicated with substantial correctness by the dotted line on the plat. There was no fence around Kremsreiter's

premises.   The complainants claim that *Boddenhagen* told them that they needn't mind Kremsreiter and could fence him right in.   A written lease was prepared and signed by the parties May 27th, and in the lease the premises are described as *"Boddenhagen's* subdivision, whole of block 2, lots 1, 2, 3, 4, 5, 6, 7, and part of rear of lot 8 in block 1, lots 1, 2, and 3 in block 3, in the county of Milwaukee."   The lease was for five years, with the option to the lessees to remain in possession on the same terms for another five years.   The grounds were to be used for athletics, baseball, and sports.   The lessees were to build a fence "completely around" the ground leased, and a grandstand, the same to become the property of the lessors at the end of the lease; and it was provided that the lessees should have the right to let space on the fence, both inside and outside, for display advertising.   The lessees began to use the premises for baseball games immediately, and at once began to have trouble with Kremsreiter because balls were batted on to his premises and it was necessary to trespass on lot 4 to reclaim them.   However, the premises were used for minor baseball league games (principally on Sunday) during the most of the season of 1915, but were not used for Sunday games in 1916.   This action was commenced May 25, 1916.   The lessees elected to retain the premises, pay the rent, and recover their damages by their cross-complaint in this action.

*O. W. Bow* of Milwaukee, for the appellants.

For the respondents there was a brief by *Raymond J. Cannon,* attorney, and *Glicksman, Gold & Corrigan,* of counsel, all of Milwaukee, and oral argument by *W. L. Gold.*

Winslow, C. J.   The appellants' first claim is that because Kremsreiter was in possession of his house on lot 5 when the lease was made and because the lease described the property as certain lots in a subdivision, the respondent lessees thereby had notice of the fact that Kremsreiter must have a right of access somewhere across the rented property

and also of the fact that there were or might be streets upon the property which could not be closed.

We cannot agree with this contention. Of course, as against Kremsreiter, his actual possession of his lots put the lessees upon inquiry as to his rights and they were charged with notice thereof, but as to the *Boddenhagens* the situation is very different. It is established in this court that where, as in the present case, a vendor points out the boundaries of land which he is selling, the vendee is entitled to rely thereon, and the vendor must point them out correctly under penalty of responding in damages to a vendee who is ignorant of the real facts. *Castenholz v. Heller,* 82 Wis. 30, 51 N. W. 432; *Gunther v. Ullrich,* 82 Wis. 222, 52 N. W. 88.

The appellants' second claim is that no legal damages are shown. The damages are measured by the difference between the rental value of the premises as represented and the rental value as they actually were. *Pewaukee M. Co. v. Howitt,* 86 Wis. 270, 277, 56 N. W. 784. The trial judge found that by reason of the removal of the fences the lessees lost the use of the property for baseball and athletic purposes for two and one-half years and that the loss amounted to $400 per year, or $1,000 in all. Deducting from this sum the rental which they would have to pay for that time (viz. $250), the total loss in value of the leasehold would be $750.

We are unable to agree with this conclusion. In the first place it appears affirmatively that the only revenues received by the lessees were from the rental of the sign privileges and the rental for baseball games. Whether the grounds were suitable and could be profitably used for football and skating purposes were matters of considerable doubt under the evidence, but in any event no attempt was made to use them for those purposes and the amounts that might be realized in such uses were purely speculative and conjectural and would furnish no basis for the assessment of damages. There is no evidence to show that the rental value of the sign privilege is any less since the removal of the fence than it was

before. So, in considering the question of the difference in rental value of the premises, the only substantial element that can be considered is the loss of their use for baseball purposes. But the difficulty here is that the testimony is quite conclusive to the effect that the use of the premises for baseball was given up because of two entirely different considerations, namely, the constant and serious difficulties with Kremsreiter, and the fact that the diamond had to be laid out so that the batter faced northeast, making the field a "sun-field" in the afternoon and undesirable on that account. On this subject *Bernhardt,* the principal lessee, testified: "There was a lot of trouble arose at the time, this man owned the grounds out there, we could not play there, he was belly-aching we were running into his cabbage patch." *Deisinger,* another lessee, testified: "Kremsreiter wouldn't allow us to get our ball; they would talk to him and he wouldn't listen to us, and we had trouble with him; that is the reason we didn't finish the season." *Neuens,* another lessee, testified that on account of the sun-field and the threats of Kremsreiter, who would not give their balls back, "We thought the best thing would be not to play any more ball in that lot." *Mischler,* the other lessee, says: "The only reason I know why they discontinued using the park in 1915 was they got into trouble with this man about his garden and things of that sort, and on account of the condition of the field and the disbanding of this [the Blatz] team."

But even if the removal of the fence were shown to be the thing which destroyed the usefulness of the park for baseball purposes, another consideration makes it impossible to base any damages upon that fact. The only baseball games which brought in any considerable revenue were Sunday games. The use of the park for Sunday games was unquestionably illegal under sec. 4595, Stats., which prohibits any one from being present at "any dancing or public diversion, show or entertainment" and from taking part in "any sport, game, or play" on Sunday. Profits made on Sundays from a

violation of the Sunday law cannot form any legal basis for the estimate of damages. *Raynor v. Valentin Blatz B. Co.* 100 Wis. 414, 76 N. W. 343.

It is true there is evidence of the renting of the park to a local league for baseball on Saturday afternoons in 1916 for $50, but it appears that after a few games this league quit on account of the trouble with Kremsreiter.

We have been unable to discover in the evidence any solid foundation for the estimate of any legal damages, hence there must be a reversal of the judgment to that extent.

*By the Court.*—That part of the judgment appealed from is reversed, with costs in favor of the defendants *Boddenhagen* against the cross-complainants, and the action is remanded with directions to dismiss the cross-complaint on the merits.