# H. D. FORCE AND W. W. FORCE, COPARTNERS DOING BUSINESS AS FORCE BROTHERS v. FRANK GOTTWALD.[1]

### June 17, 1921.

### No. 22,264.

**Landlord and tenant — breach of contract by landlord — measure of damages.**

1. Ordinarily, the measure of damages for a breach by the lessor of a covenant to make improvements, is the difference between the rental value of the premises in their actual condition and in the condition in which the lessor agreed to put them.

**Same — loss of profits.**

2. But where the lessor rents the premises for a business which cannot be carried on in cold weather without artificial heat, and agrees to furnish and install the apparatus necessary to provide such heat, and the business after being established and operated during the warm months is interrupted by his failure to install such apparatus, he is liable to the lessee for loss of profits if such loss was a direct consequence of his breach of the contract and the amount thereof is not contingent or speculative but is shown with reasonable certainty.

**Evidence of amount of loss.**

3. The amount of such loss resulting from the interruption of an established business may be shown by showing the amount of profits for a reasonable period immediately preceding such interruption, if the other conditions were substantially the same.

**Entries in book admissible.**

4. The correctness of plaintiff's record of receipts and expenditures having been established by the one who made the entries, it was properly received in evidence as a memorandum in connection with his testimony.

[1]Reported in 183 N. W. 356.

**Construction of writing.**
> 5. The instrument, executed by the parties, evidenced a present con-
> tract of leasing, and not an agreement to make a lease in the future.

Action in the district court for St. Louis county to recover $3,150 damages for failure to make repairs, alterations and improvements upon a certain building. The case was tried before Childress, J., who when plaintiffs rested denied defendant's motion for dismissal of the action and at the close of the testimony defendant's motion for a directed verdict, and a jury which returned a verdict for $944, and answered certain questions as stated in the opinion. (See page 270.) Defendant's motion for judgment notwithstanding the verdict was denied, and his motion for a new trial was granted unless plaintiff consented to a reduction of the verdict from $944 to $711.62. From the judgment entered pursuant to the verdict, as reduced by the order for judgment, defendant appealed. Affirmed.

*W. H. Phelps,* for appellant.

*Thos. J. Doyle,* for respondents.

TAYLOR, C.

Plaintiffs are engaged in the business of repainting and refinishing automobiles.

Defendant is the owner of a brick building consisting of two stories and basement known as number 210 Central avenue in West Duluth. For some years the ground floor was occupied as a clothing store; the second floor is fitted up as a public hall, and is also rented at stated times to various lodges as a place for holding their meetings. On February 21, 1919, plaintiffs and defendant entered into the following agreement:

"Five year lease at $165.00, entire building, first privilege renewal at price to be agreed upon:

"Received of H. D. Force and W. W. Force $50.00 and no-100 dollars account one months rent Grade floor and basement Gottwald Building 210 Central Ave. Gottwald to get rent hall until such time as improvements and additions are complete. This is portion of agreement by which Force Bros. are to Rent the entire Bldg. at $165.00 per

month when addition of 45x50 feet is added to present Building when heat and repairs agreed upon and to be agreed upon are completed. Above rent to apply from March 1st to April 1st 1919. Rentors to furnish heat and fuel necessary for entire building. Also to be responsible for any freeze up or damage occasioned by neglect on part of rentors. Owner to keep roof in repair and do all outside improvements necessary. Building to be repaired and built according to plans to be submitted.

"Force Bros.                          Accepted
    "By H. D. Force and              Frank Gottwald
        "W. W. Force.                    By E. G. Kreidler,
                                                Agent."

Plaintiffs took possession of the ground floor and basement of the building on March 1, 1919, and paid rent at the rate of $50 per month until June 1, 1919, on which date they took possession of the entire building including the addition, and thereafter paid rent at the rate of $165 per month until they vacated the premises in the spring of 1920. In December, 1919, and while still in possession of the premises, they brought this suit for damages for defendant's failure to make certain improvements, alterations and repairs which he had agreed to make. In their complaint they set forth four causes of action. In the first they asserted a claim for loss of profits; in the second a claim for the difference between the rental value of the premises without the improvements and the rental which they had agreed to pay; in the third a claim for the expense of installing certain water pipes. The fourth cause of action was abandoned at the trial, but the three above mentioned were submitted to the jury. In answer to specific questions submitted to them, the jury found that plaintiffs were entitled to recover the sum of $854 on the first cause of action, the sum of $70 on the second cause of action, and the sum of $20 on the third cause of action. They returned a general verdict for the aggregate amount of these sums. Thereafter defendant made an alternative motion for judgment notwithstanding the verdict or for a new trial. On examining the record the court concluded that there was no evidence to sustain the verdict on either the second or third causes of action or to sustain a verdict of more than $711.62 on the first cause of action, and

made an order granting a new trial unless plaintiffs consented to reduce the general verdict to the sum of $711.62. Plaintiffs consented to the reduction and judgment was entered on the verdict as so reduced. Defendant appealed from the judgment.

The trial court having eliminated the other three causes of action and the plaintiffs having acquiesced therein, the question remaining is whether the plaintiffs established a right to recover for loss of profits.

The written memorandum shows on its face that it does not cover the entire contract. While the parties disagree as to some of the terms of the contract not set forth in the writing, there is practically no dispute concerning the facts on which the claim for loss of profits is based. It was understood by both parties that plaintiffs were renting the building for the purpose of using the ground floor as a shop in which to repaint and refinish automobiles. To fit it for this use defendant agreed to make various improvements, alterations and repairs. To carry out these undertakings he constructed an addition to the rear of the building 40x50 feet, and made various other changes not involved on this appeal. These were completed during the spring of 1919.

The building was heated by steam. To clear the floor so that automobiles could be moved about conveniently, defendant had agreed to remove two radiators from the middle of the building and install them against the wall. He had also agreed to furnish and install additional radiators or steam coils sufficient to heat the building and the addition. The plaintiffs were to do their own heating, but defendant was to furnish the heating plant installed ready for use. He disconnected and removed the two radiators early in the spring, but did nothing toward replacing them or installing the additional apparatus until the middle of October, and did not have the heating plant ready for use until the first day of November.

The evidence shows that the work of painting and finishing an automobile can only be done in a place where the temperature is at least as high as 73 degrees Fahrenheit, that it is impossible to do a good job of painting and finishing in a cold room. Plaintiffs repainted and refinished automobiles during the summer, but the weather became so cold in September and October that they were unable to do such work without artificial heat and were obliged to quit until the heating plant

was ready for use. The claim in controversy is for the loss of profits or earnings during these two months caused by defendant's failure to install the heating apparatus as agreed.

It is well settled that, under ordinary circumstances, the measure of damages for a breach by the lessor of a covenant to make improvements and repairs, is the difference between the rental value of the premises in their actual condition and their rental value in the condition in which the lessor agreed to put them. Long v. Gieriet, 57 Minn. 278, 59 N. W. 194; Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289; Warren v. Hodges, 137 Minn. 389, 163 N. W. 739; 18 Am. & Eng. Enc. (2d ed.) 233; 16 R. C. L. 792. Defendant invokes this rule and insists that plaintiffs cannot recover for loss of profits, but only for diminished rental value, and that they failed to establish a cause of action because they failed to show the rental value.

There are exceptions to the rule that such damages are to be measured by the diminution in the rental value. In Goebel v. Hough, 26 Minn. 252, 2 N. W. 847, a case in which the lessor agreed to make alterations and repairs at a stated time but failed to do so and interrupted the lessee's business to make them at a later time, it is said [p. 256]:

"When a regular and established business, the value of which may be ascertained, has been wrongfully interrupted, the true general rule for compensating the party injured is to ascertain how much less valuable the business was by reason of the interruption, and allow that as damages. This gives him only what the wrongful act deprived him of. The value of such a business depends mainly on the ordinary profits derived from it. Such value cannot be ascertained without showing what the usual profits are; nor are the ordinary profits incident to such a business contingent or speculative, in the sense that excludes profits from consideration as an element of damages. What they would have been, in the ordinary course of the business, for a period during which it was interrupted, may be shown with reasonable certainty. What effect extraordinary circumstances would have had upon the business might be contingent and conjectural, and any profits anticipated from such causes would be obnoxious to the objection that they are merely speculative; but a history of the business, for a reasonable time prior to a period of interruption, would enable the jury to

determine how much would be done under ordinary circumstances, and in the usual course, during the given period; and the usual rate of profit being shown, of course the aggregate becomes only a matter of calculation."

To recover prospective profits as damages for a breach of contract, it must appear that the loss of the profits was not a remote but a direct consequence of the breach; that the anticipated profits did not depend on contingencies but were reasonably certain to accrue if the contract had not been breached; and that the amount of such profits was not conjectural or speculative, but was proven with reasonable, though not necessarily absolute, certainty. Cushing v. Seymour, Sabin & Co. 30 Minn. 301, 15 N. W. 249; Doud, Sons & Co. v. Duluth Milling Co. 55 Minn. 53, 56 N. W. 463; Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638; Casper v. Klippen, 61 Minn. 353, 63 N. W. 737, 52 Am. St. 604. It must also appear that the circumstances were such that the loss of such profits may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of its breach. In Mississippi & R. R. Boom Co. v. Prince, 34 Minn. 71, 24 N. W. 344, the defendant was unable to operate his sawmill because the boom company refused to deliver his logs, and it was held that he was entitled to recover for loss of profits as the company had knowledge of the facts. In Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638, plaintiff had a lease of a certain amount of water power to operate a flour mill, and it was held that he could recover for loss of profits caused by failure to furnish the full amount of such power. A similar ruling was made in Johnson v. Wild Rice Boom Co. 118 Minn. 24, 136 N. W. 262. See also Emerson v. Pacific C. & N. P. Co. 96 Minn. 1, 104 N. W. 573; Independent Brewing Assn. v. Burt, 109 Minn. 323, 123 N. W. 932; Poposkey v. Munkwitz, 68 Wis. 322, 32 N. W. 35, 60 Am. Rep. 858, Raynor v. Blatz Brewing Co. 100 Wis. 414, 76 N. W. 343.

In the present case defendant rented the premises to plaintiffs for use as a shop in which to repaint and refinish automobiles, and agreed to furnish and install the apparatus necessary to warm the building properly. As early as June he was requested by plaintiffs to install the apparatus at once and promised to do so. Similar requests followed by

149 M.—18.

similar promises were made at frequent intervals until it was finally installed. He explains the delay by saying that he was unable to get steamfitters to do the work earlier. We think plaintiffs brought themselves within the rule entitling them to recover for loss of profits. To show the amount of such loss they proved the amount of their profits or net earnings over and above expenses, for each of the months of June, July, August, September, October and November, also that in September and October they had in the shop waiting to be done enough work to furnish full employment for them and their men during those months, and that they refused additional work offered them because they were unable to do it. Except for lack of heat the conditions seem to have been as favorable in September and October as in the other months, but the profits for those months were only a small part of the average profits for the other months. Proving these facts was the proper way to show the loss sustained, and established the amount of such loss with sufficient certainty. Goebel v. Hough, 26 Minn. 252, 2 N. W. 847; Aldrich v. Wetmore, 56 Minn. 20, 57 N. W. 221; Johnson v. Wild Rice Boom Co. 118 Minn. 24, 136 N. W. 262; Raynor v. Blatz Brewing Co. 100 Wis. 414, 76 N. W. 343.

The plaintiffs were brothers and devoted their entire time to the business. H. D. Force was an expert in that line and did much of the finishing work himself; W. W. Force did work which was less particular and took charge of the financial end of the business. They did a strictly cash business, paying all their expenses in cash as they accrued and receiving cash for each job of work when it was finished. They kept no formal set of books. They noted on temporary memorandum books or slips each job as it was received and amount paid when it was finished, and their expenditures as they were made. At or shortly after the end of each month W. W. Force entered the receipts and expenses during that month in a book kept for that purpose. On one side of the account he entered the amount received for each job and on the other side the amount expended for wages to their employes, for material, for rent and for other items, and struck a balance showing the net earnings or profits for that month which they divided equally between themselves· as their own compensation. This record was the

only permanent book which they kept and was received in evidence in connection with the testimony of W. W. Force.

Defendant insists that this book was not an account book within the meaning of the statute, and that the court erred in receiving it in evidence. Whether it was or was not an account book within the meaning of the statute, we think it was properly received in evidence in connection with the testimony of W. W. Force. The entries in it were made by him as a part of his duties and were made as a record of the business transactions of the firm. He testified that he made all these entries himself, and, in substance, that he knew they were correct at the time he made them. Such a memorandum thus authenticated and made a part of the testimony of the witness is admissible in evidence independent of the statute making account books competent evidence. 1 Wigmore, Ev. §§ 737, 738, 747; Meyers v. McAllister, 94 Minn. 510, 103 N. W. 564; Naas v. Chicago, R. I. & Pac. Ry. Co. 96 Minn. 84, 104 N. W. 717; Fortier v. Skibo Timber Co. 111 Minn. 518, 127 N. W. 414.

Defendant also contends that the written instrument executed by the parties was not a lease, but only an agreement to make a lease at some time in the future, and that plaintiffs, by taking possession under it, became tenants at will, and that a tenant at will cannot recover damages from his lessor for failure to make improvements or repairs.

We are unable to sustain defendant's contention as to the nature of this instrument. We think it evidenced a contract by which the premises were then leased to the plaintiffs, and not an agreement to give them a lease at some indefinite time thereafter. It contains the statement "five year lease," a provision for renewal, an acknowledgment of the payment of $50 as one month's rent, the month to begin March 1, 1919, a provision that the rent is to be $165 per month for the entire building when the improvements are completed, a provision that the lessees are to heat the building and the lessor is to keep the roof and the outside in repair, and clearly contemplates that the term is to begin before the improvements are made, or at least before they are completed. These terms and provisions do not harmonize with defendant's theory but import a present leasing, and we find nothing to indicate that the parties intended any further action by either before

the contract went into effect.

Of course plaintiffs could not recover for loss of profits and also for diminished rental value, but, as the case now stands, we find no error which would justify directing a new trial and the order appealed from is affirmed.